UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, *Plaintiff* | CIVIL ACTION NO. |
| v. | JUDGE: |
| LAFAYETTE HEALTH VENTURES, INC., LAFAYETTE GENERAL HEALTH SYSTEM, INC., LAFAYETTE GENERAL MEDICAL CENTER, INC., and AL PATIN, *Defendants* | MAGISTRATE JUDGE: |

## **COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, Certain Underwriters at Lloyd's subscribing to Policy Number W205D7170101, which are members of underwriting syndicate numbers 2623 and 623 managed by Beazley Furlonge Ltd. (hereinafter "Underwriters"), through undersigned counsel, respectfully seek a Declaratory Judgment pursuant to 28 USC 2201 and Rule 57 of the Federal Rules of Civil Procedure against defendants, Lafayette Health Ventures, Inc., Lafayette General Health System, Inc., Lafayette General Medical Center, Inc., and Al Patin, for the purpose of determining a question of actual, immediate controversy between the parties.  In support of this complaint, Underwriters represent as follows:

## PARTIES

1. At all pertinent times, plaintiff Underwriters were, and still are, insurers organized and existing under the laws of the United Kingdom, having their principal place of business in the United Kingdom.

2. At all pertinent times, defendant Lafayette General Health System, Inc., was, and still is, a corporation organized and existing under the laws of the State of Louisiana, with its principal place of business in the State of Louisiana.

3. At all pertinent times, on information and belief, defendant Lafayette Health Ventures, Inc., was a corporation organized and existing under the laws of the State of Louisiana, with its principal place of business in the State of Louisiana.

4. At all pertinent times, on information and belief, defendant Lafayette General Medical Center, Inc., was, and still is, a corporation organized and existing under the laws of the State of Louisiana, with its principal place of business in the State of Louisiana.

5. At all pertinent times, on information and belief, defendant Al Patin, was, and still is, a person of the full age of majority and a resident of the State of Louisiana.

## JURISDICTION AND VENUE

6. This declaratory judgment action is brought pursuant to 28 USC 2201 and Rule 57 of the Federal Rules of Civil Procedure.

7. This Honorable Court has original jurisdiction over this matter pursuant to 28 USC 1332(a)(2) because there is diversity of citizenship between plaintiff, Underwriters, on the one hand, and all of the defendants, on the other hand.

Further, the amount in controversy exceeds the sum of $75,000, exclusive of interest, costs and attorneys' fees.

8. Venue is proper in the United States District Court for the Western District of Louisiana pursuant to 28 USC 1391(b)(1) because one (or more) of the defendants resides in this district and/or has its principal place of business in this district, and also pursuant to and 28 USC 1391 (b)(2) because a substantial part of the events or omissions giving rise to this matter occurred in this district.

## NATURE OF THE CLAIM

9. This is an action for declaratory judgment pursuant to 28 USC 2201 and Rule 57 of the Federal Rules of Civil Procedure to determine an actual case and controversy between Underwriters, on the one hand, and the defendants, on the other hand, regarding coverage under a policy of insurance issued by Underwriters to Lafayette General Health System ("LGHS").

10. Underwriters seek a judgment declaring that they do not provide insurance and that they have no insuring obligation to any of the defendants with regard to the claims of Alecia M. Rideau, M.D. ("the Rideau Claim" or "the Rideau Claims"), in proceeding 6:18-cv-00473, presently pending before Judge Terry A. Doughty and Magistrate Judge Patrick J. Hanna of this Honorable Court ("the Underlying Litigation" or "the Litigation").

## THE POLICY

11. Underwriters issued policy number W205D7170101 ("the Policy") to Lafayette General Health System.  <u>The Policy has policy period of September 30, 2017 – September 30, 2018 ("the Policy Period")</u>.  A certified copy of the Policy is attached hereto as **EXHIBIT A**.

12. The Policy is a multi-part liability policy that, when applicable, provides four general classes of coverage to its insureds:

    a. Directors, Officers and Entity Liability;

    b. Regulatory Liability;

    c. Fiduciary Liability; and

    d. Employment Practices Liability

13. The present matter actually involves only the issue of coverage under the "Employment Practices Liability" aspect of the Policy; however, as will be shown, <u>the Policy as a whole is inapplicable to the Rideau Claims because the Rideau Claims were not 'first made' during the Policy Period, as is required by the Policy</u>.

14. The Policy's "Employment Practices" coverage is subject to a 'Retention' of $150,000.

15. Certain terms and provisions of the Policy are particularly pertinent to the issues herein.  Redacted, excerpted and/or summarized portions of certain policy provisions are set forth below.  These provisions are set out here for the convenience of the Court and the parties, and do NOT represent the actual and complete terms and provisions of the Policy.  The Court and the parties are referred to **EXHIBIT A**  for the actual and complete terms and provisions of the

Policy. Underwriters reserve any and all rights and defenses under and pursuant to the actual and complete terms and provisions of the Policy and do not waive any rights or defenses by setting forth redacted, excerpted, or summarized provisions in this pleading. Terms in bold in the following excerpts repeat the bold type of the Policy, indicating defined terms; provisions underlined are underlined by undersigned counsel for emphasis.

16. Page 1 of the Declarations of the Policy provides, in pertinent part, in bold, all-capital letters:

> **NOTICE: THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY…. IT APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD** AND REPORTED IN WRITING TO THE UNDERWRITERS AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN THE END OF THE POLICY PERIOD.

17. The "Policy Terms and Conditions" section of the Policy[1] contains the following pertinent provisions:

   a. "**Policy Period**" means the period of time between the Inception Date and the Expiration Date unless terminated earlier, and specifically excludes any **Optional Reporting Period**.

   b. **VII. NOTIFICATION**
      A. In the event any **Executive Officer** becomes aware that a Claim has been made against any of the **Insureds**, the **Insureds** shall, as a condition precedent to their rights to payment under this Policy, give to Underwriters notice in writing of such Claim as soon as practicable ….

---

[1] Policy form F00450-042015 ed.

**Complaint for Declaratory Relief: Certain Underwriters at Lloyd's vs. Lafayette Health Ventures, Inc., et al.**                                                      Page 5

18. The "Employment Practices Liability Clause" of the Policy[2] contains the following pertinent provisions:

   a. **I. INSURING CLAUSES**

      A. The Underwriters shall pay on behalf of the **Insureds** all **Loss** resulting from any **Claim** <u>first made against any **Insured** and reported in writing to the Underwriters during the **Policy Period**</u> …[3] for a **Wrongful Act**.

   b. The term "**Claim**" is defined in the Policy, in those terms pertinent here, as follows:

      "**Claim**" means:
      1. a written demand or request for monetary damages on non-monetary relief against any of the Insureds ….

   c. The term "**Executive Officer**" is defined in the Policy, in those terms pertinent here, as follows:

      "**Executive Officer**" means the chief executive officer, chief operating officer, president, Manager, chief financial officer, in-house general counsel, risk manager, human resources staff, or an individual acting in a similar capacity with the **Insured Organization**.

   d. The term "**Inappropriate Employment Conduct**" is defined in the Policy, in those terms pertinent her, as follows:

      "**Inappropriate Employment Conduct**" means any of the following:
      1. actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful;

---

[2] Policy form F00453-042015 ed.
[3] The 'ellipsis' contains language referring to the "Optional Reporting Period", an available option under the policy that was not exercised by the insured, and which, in any event, would be irrelevant to the issues herein because it relates to extension of the reporting period after the end of the Policy Period.

      2.      actual or alleged wrongful demotion, evaluation, deprivation of a career opportunity, or discipline;
      3.      actual or alleged breach of an express written employment agreement ….
      4.      <u>actual or alleged violation of the Family and Medical Leave Act</u>.
\*\*\*

e.    The term "**Insureds**" is defined in the Policy, in those terms pertinent here, as follows:

> "**Insureds**" means the **Insured Persons** and the **Insured Organization**.

f.    The term "**Insured Persons**" is defined in the Policy, in those terms pertinent here, as follows:

> "Insured Persons" means all persons who were, now are, or shall be duly elected or appointed:
> 1.    Directors, officers, …, **Employees** … of the Insured Organization.

g.    The term "**Loss**" is defined in the Policy, in those terms pertinent here, as follows:

> "**Loss**" means money which an Insured is legally obligated to pay as a result of a Claim ….

h.    The term "**Wrongful Act**" is defined in the Policy, in those terms pertinent here, as follows:

> "**Wrongful Act**" means **Inappropriate Employment Conduct**, **Discrimination**, **Harassment**, and/or **Retaliation** by any of the Insureds against an Insured Person ….

i. Settlement and Defense provisions of the Policy:

V. SETTLEMENT AND DEFENSE

A. <u>It shall be the duty of the **Insured** and not the duty of the Underwriters to defend **Claims**</u>. ***

B. <u>The **Insureds** shall not … select any defense counsel, incur any **Defense Costs**, … without the Underwriters' prior written consent</u>, which shall not be unreasonably withheld. The Underwriters shall not be liable for any settlement, **Defense Costs**, assumed obligation, admission or stipulated judgment to which they have not consented ….

C. The Underwriters shall advance, on behalf of the **Insured**, **Defense Costs** which the **Insured** have incurred in excess of the **Retention** in connection with a **Claim** made against them, prior to the final disposition of such **Claim**, provided that to the extent it is finally established that any such **Defense Costs** are not covered under this **Policy**, the **Insureds** … shall repay such **Defense Costs** to the Underwriters.

## FACT BACKGROUND

19. Plaintiff Rideau, in the Underlying Litigation,[4] filed suit in this Honorable Court on April 6, 2018, making claim against the defendants in that matter (being the same parties defendant sued herein) for alleged "interference" and "retaliation" under the Family and Medical Leave Act of 1993 ("FMLA"). Underwriters received notice of the Rideau Claim, i.e., notice of the Underlying Litigation, on April 11, 2018. This was the first notice to Underwriters of the Rideau Claim. This notice

---

[4] Proceeding 6:18-cv-00473, presently pending before Judge Terry A. Doughty and Magistrate Judge Patrick J. Hanna of this Honorable Court.

**Complaint for Declaratory Relief: Certain Underwriters at Lloyd's
vs. Lafayette Health Ventures, Inc., et al.** Page 8

to Underwriters was received during the Policy Period. However, there was no indication as to when plaintiff Rideau *first made* her FMLA claims against LGHS or any other 'Insured' under the Policy.

20. The Policy, as a 'claims made and reported' policy, requires that two events must occur *during the Policy Period*:

    a. The claim (for which insurance coverage is sought) must be first made against an Insured; AND

    b. The claim must be reported to Underwriters.

21. Whereas the second of these requirements did occur during the Policy Period, the first did not: that is to say, plaintiff Rideau first made her claim for FMLA recovery against LGHS well before the inception of the Policy on September 30, 2017. Accordingly, there is no coverage for any of the defendants under the Policy. Underwriters asks this Honorable Court to confirm this fact and therefore to enter a judgment herein to the effect that Underwriters have no insuring obligation with regard to the Rideau Claims and/or the Underlying Litigation.

22. Beazley Group is comprised of various subsidiaries, agencies and other related entities that perform a variety of functions for Underwriters, including but not limited to underwriting and claims handling. One of these entities, Beazley USA Services, Inc., among other duties, acts as a claims handling agency for Underwriters, and is hereinafter referred to as "**Beazley**".

23. Having received its first notice of the Rideau Claim on April 11, 2018, Underwriters responded on April 16, 2018 (three 'work days' later), in a letter addressed by Adam Keating of Beazley to Mr. Gordon Rountree, General

Counsel of LGHS. In this letter of <u>April 16, 2018</u>, Mr. Keating, on behalf of Underwriters, acknowledged receipt of the Rideau Claim, advised LGHS that the Rideau Claim was being assessed, and noted that <u>"we [Underwriters] must reserve all rights available to Underwriters under the Policy, at law and in equity</u>." The letter further acknowledged that LGHS similarly reserved its rights. A copy of this April 16, 2018, letter is attached hereto as **EXHIBIT B**.

24. On July 6, 2018, Mr. Keating of Beazley, on behalf of Underwriters, wrote to Janet Guidry, Associate General Counsel of LGHS, advising that Underwriters "will advance Defense Costs incurred in connection with the Rideau Matter … in excess of the applicable Retention … and <u>pursuant to a full reservation of rights as set forth below</u>." The Keating letter of July 6, 2018, set out 8 single-spaced pages of detailed discussion of policy provisions and coverage issues, but, in particular, specifically set forth the Policy requirement that <u>a Claim must be "first made against any Insured and reported … *during the Policy Period* …</u>." The July 6, 2018, letter further requested that LGHS provide, among other things, "<u>copies of any and all demands or complaints made by Dr. Rideau</u>", and again stated that "<u>In the meantime, Beazley reserves all rights as to when a Claim was first made against an Insured</u> …." The July 6, 2018, letter to Mr. Rountree further pointed out that "It shall be the duty of the Insured and not the duty of [Underwriters] to defend Claims" and also that any advancement of Defense Costs by Underwriters was subject to reimbursement to the extent that it might be found that the matter was not covered by the Policy. The letter, for the third time, advised that any such advancement of Defense

Costs was subject to a "full reservation of rights under the Policy and applicable law, including but not limited to the right to cease advancement of Defense Costs upon Beazley's determination that coverage is not available under the Policy, and the right to seek reimbursement from the Insureds …." A copy of this July 6, 2018, letter is attached hereto as **EXHIBIT C**.

25. Underwriters' request for "copies of any and all demands or complaints made by Dr. Rideau" was repeated in a covering email sent by Adam Keating of Underwriters to Ms. Janet Guidry of LGHS on July 6, 2018.

26. By email dated July 6, 2018, directed by Ms. Guidry of LGHS to Adam Keating of Underwriters, LGHS responded to Underwriters' request for "copies of any and all demands or complaints made by Dr. Rideau" by referring Underwriters to LGHS' 'outside' defense counsel, Mr. Michael D. Hebert. A copy of this July 6, 2018, email is attached hereto as **EXHIBIT D**.

27. By email dated July 9, 2018, Ms. Guidry requested that LGHS' defense counsel, Mr. Michael Hebert, send "a copy the prior demands received from her [Dr. Rideau's] first three attorneys."

28. Beazley/Underwriters heard nothing of substance from LGHS regarding this matter until March 7, 2019, when an email to Steve Shaffer of Beazley from Janet Guidry (Associate General Counsel of LGHS) advised that "This case is moving along rapidly. … We are on track for trial on July 15 – 19, 2019. …." As of March 7, 2019, Beazley had never received a complete response from LGHS or its defense counsel to its request for "copies of any and all demands or complaints made by Dr. Rideau".

29. On March 20, 2019, Mr. Rountree (GC for LGHS) noted in an email to his insurance broker that he had not been sending Mr. Hebert's invoices to Underwriters so that Underwriters could track the erosion of the $150,000 Retention (i.e., so that Underwriters could know when its coverage might be invaded if indeed there was coverage).

30. On May 17, 2019, Underwriters received a group of invoices reflecting the work and billing of LGHS' defense counsel, Michael Hebert.

31. During April – June, 2019, Underwriters has become aware:

    a. That Dr. Rideau complained in writing about LGHS' actions regarding her requests for FMLA leave as early as the spring of 2016.[5]

    b. In August, 2016, Mr. Rountree of LGHS stated in an email that he expected a discrimination suit from Rideau.[6]

    c. That Mr. Hebert was retained on September 1, 2016, for potential defense of disputes arising out of the termination of Dr. Rideau's employment on that date.

    d. That counsel for LGHS received a demand letter from Dr. Rideau's then counsel, Vicky Bowers, on or about October 7, 2016.

    e. That, on September 20, 2017 (still prior to the inception of the Policy), a comprehensive settlement demand was made by Dr. Rideau to counsel for LGHS, including an offer to settle her FMLA claims, and demanding a very large sum of money for the settlement. A copy of this settlement

---

[5] Plaintiff Rideau's memorandum in opposition to LGHS' motion for continuance of trial, document 110 in the Litigation, i.e., Civil Action 6:18-cv-00473,
[6] Civil Action 6:18-cv-00473, Rec. Doc. 76, Plaintiff's memorandum in opposition to defendants' Motion for Summary Judgment, page 10, PAGE ID# 2375.

        demand is attached hereto as **EXHIBIT E**.  This settlement demand is itself a 'Claim' made outside of the Policy Period.  Further, the fact that a comprehensive <u>settlement demand</u> was made on September 20, 2017, necessarily implies that the claims for which settlement was being demanded had been made and were extant for some period of time well before September 20, 2017.

    f.    That LGHS' Initial Disclosures, dated July 2, 2018, indicate that it did not believe any insurance to be applicable to the Rideau Claims.[7]  A copy of LGHS' Initial Disclosures is attached hereto as **EXHIBIT F**.

32.    Beazley, on behalf of Underwriters, has never received a complete response to its requests for  "<u>copies of any and all demands or complaints made by Dr. Rideau</u>".

33.    Beazley, on behalf of Underwriters, never received any request from LGHS or any of the defendants in the captioned case, that Underwriters  should participate in the mediation in the underlying Litigation that had been set for June 20, 2019, or be prepared to make any contribution to any settlement of the Rideau Claims or the Litigation.

34.    Beazley, on behalf of Underwriters, as late as June 12, 2019, was still requesting from LGHS "<u>copies of any and all demands or complaints made by Dr. Rideau</u>", a request which has never been fully responded to; as of said date, Beazley, on behalf of Underwriters, also repeated its complete reservation of rights and defenses in the matter of the Rideau Claim and Litigation; that reservation of all rights has been in place since April 16, 2018, and remains in place.

---

7    Civil Action 6:18-cv-00473, Rec. Doc. 110-3, page 4,  PAGE ID# 3852.

**Complaint for Declaratory Relief:  Certain Underwriters at Lloyd's
vs. Lafayette Health Ventures, Inc., et al.**                                            **Page 13**

35. Underwriters submits that it is clear that Dr. Rideau 'first made claim' against LGHS long before the inception of the Underwriters policy on September 30, 2017. Since Rideau's Claims were 'first made' outside of the Policy Period, there can be no coverage.

36. Underwriters continue to reserve all rights and defenses under the Policy and further reserve all rights to conduct full discovery with regard to all claims made by Dr. Rideau against any of the defendants herein.

## REQUEST FOR DECLARATORY RELIEF

37. Underwriters adopt and incorporate by reference the allegations set forth in the preceding paragraphs.

38. There is an actual, present, and existing controversy between Underwriters, on the one hand, and the above-named defendants, on the other hand, with regard to whether the Policy affords any coverage to any of the said defendants with regard to the Rideau Claims and/or the Underlying Litigation.

39. Pursuant to the Declaratory Judgment Act, 28 USC2201, et seq., Underwriters seek a judicial declaration that the Policy affords no coverage to any of the defendants herein with regard to the Rideau Claims and/or the Underlying Litigation.

WHEREFORE, plaintiff, Certain Underwriters at Lloyd's subscribing to Policy Number W205D7170101, which are members of underwriting syndicate numbers 2623 and 623 managed by Beazley Furlonge Ltd. respectfully request

that this Court enter an order and judgment declaring the rights and obligations of the parties under the Policy, including, but not limited to, declaring:

1.     That the Policy does not afford coverage to any of the defendants with regard to the Rideau Claims and/or the Underlying Litigation; and

2.     For all such other and further relief as equity and justice may require and permit.

Respectfully submitted this 26th day of June, 2019.

*Charles E. Leche*

_____
Frederic Theodore Le Clercq, (La. # 23517)
Charles E. Leche, T.A.  (LA # 08218)
Deutsch Kerrigan, LLP
755 Magazine Street
New Orleans, Louisiana  70130
Telephone:   504 581 5141
Email: ted@deutschkerrigan.com
Email: cleche@deutschkerrigan.com
Counsel for Certain Underwriters at Lloyds

List of attachments:

EXHIBIT A:   Certified copy of Underwriters policy W205D7170101

EXHIBIT B:   April 16, 2018, letter, Keating to Rountree

EXHIBIT C:   July 6, 2018, letter, Keating to Guidry

EXHIBIT D:   July 6, 2018, email,  Guidry to Keating

EXHIBIT E:   September 20, 2017, settlement demand

EXHIBIT F:   July 2, 2018 Initial Disclosures of LGHS