16 April 2018

**VIA ELECTRONIC MAIL**
*(grountree@lgh.org)*
Gordon Rountree
Lafayette General Health System, Inc.
1211 Coolidge Street
Suite 302
Lafayette, LA 70503

**Claim No.: BEAZL100002936581**
**Claimant: Alecia Rideau**
**Risk Ref: W205D7170101**
**Insurer: Beazley USA**
**Insured: Lafayette General Health System**

Adam Keating

Beazley Group

30 Batterson Park Road
Farmington, CT 06032
USA

T(860) 677 3700
F(860) 679 0247

info@beazley.com
www.beazley.com

Dear Mr. Rountree,

We are in receipt of your notice of loss regarding the above referenced matter. I am the assigned Claims Manager, and I very much look forward to working with you.

We are in the process of completing our coverage analysis and determining our obligations and duties under the above policy. I will provide further correspondence upon completion of our analysis. Given the very limited information currently known to us, and in an abundance of caution, we must reserve all rights available to Underwriters under the Policy, at law and in equity. We hereby acknowledge your rights to be similarly reserved.

In the interim, please do not hesitate to contact me should you have any questions or concerns. I can be reached at (860) 674-4607 or via email at Adam.Keating@beazley.com.

Kind Regards,

Adam Keating
**Beazley Group**
(860) 674-4607
Adam.Keating@beazley.com

cc: Christine Bilbrey, Mary Meinert (via email)

*EXHIBIT 1*

July 6, 2018

**VIA EMAIL**
(*groundtree@lgh.org*)
Janet Guidry
Lafayette General Health System, Inc.
1211 Coolidge St., Suite 302
Lafayette, LA 70503

| | |
|---|---|
| **Insured:** | **Lafayette General Health System** |
| **Insurer:** | **Certain Underwriters at Lloyds, London** |
| **Policy No.:** | **W205D7170101** |
| **Claim No.:** | **BEAZL100002936581** |
| **Retention:** | **$150,000** |
| **Matter:** | ***Rideau v. Lafayette Health Ventures, Inc., et al., 6:18-cv-00473-TAD-PJH (W.D. La.)*** |

Adam Keating

Beazley Group

30 Batterson Park Road
Farmington, CT 06032
USA

T(860) 677-3700
F(860) 679-0247

info@beazley.com
www.beazley.com

Dear Ms. Guidry:

Lafayette General Health System ("Lafayette") submitted to Certain Underwriters at Lloyds, London ("Beazley") the above-referenced *Rideau* Matter. This letter follows up on my previous communication to Lafayette dated April 16, 2018. The purpose of this letter is to provide Lafayette with Beazley's initial coverage analysis and to apprise Lafayette of its obligations and rights as well as the facts and/or Policy provisions that Beazley is presently aware of which may affect the **Insured's** ultimate entitlement to coverage.

As set forth in detail below, Beazley will advance **Defense Costs** incurred in connection with the *Rideau* Matter under the above-referenced Policy, in excess of the applicable Retention for this matter, and pursuant to a full reservation of rights as set forth below. We discuss herein the operation of the Policy and additional information Beazley requires as part of its investigation of this matter.

In order to put Beazley's position in context, we summarize below the allegations contained in the documents provided to Beazley to date. You should refer to those documents themselves for the complete allegations therein. We note that the allegations remain unsubstantiated at this time and that, in reciting those allegations, Beazley does not now express any view on their merit or lack of merit. Other than headings, terms appearing in bold are defined in the Policy. Further, this letter does not modify the terms and conditions of the above-referenced Policy, which Beazley requests that you review together with this letter.

## I.  **BACKGROUND**

On or about April 6, 2018, Dr. Rideau filed a Complaint in the above-captioned lawsuit (the "Complaint") against Lafayette Health Ventures, Inc. ("LHV"), Lafayette General Health System, Inc. ("LGHS"), which is allegedly the parent company of LHV, and Al Patin, who allegedly is the Chief Administrative Officer of LHV, and the Senior Vice President of LGHS.

*EXHIBIT 2*

beazley

In her Complaint, Dr. Rideau alleges that the Defendants denied her rights under the Family and Medical Leave Act of 1993 ("FLMA").  The Complaint alleges that Dr. Rideau was diagnosed with breast cancer on February 9, 2016.  She alleges that she spoke with supervisor Craig Ortego about her diagnosis on or about February 17, 2016, and sent her FLMA paperwork to human resources on or about February 26, 2016.  Allegedly, however, Dr. Rideau learned that Mr. Ortego was upset that she did not discuss her leave with him in person.  Dr. Rideau complained about Mr. Ortego's reaction to human resources.  Allegedly, although someone from human resources said that Mr. Ortego would be investigated, human resources began to investigate Dr. Rideau.  Dr. Rideau went on leave on March 28 2016, and returned on May 23, 2016.

Allegedly, when Dr. Rideau returned from leave, she noticed that the staff's attitude toward her had changed.  Also, when Dr. Rideau allegedly informed Mr. Patin that she would need two additional weeks of leave for breast reconstruction after her mastectomy, Mr. Patin denied her request.  Mr. Patin allegedly told her she would need to take her additional leave in 2017, and would need to find her own replacement before she could take leave.  Allegedly, on or about August 24, 2016, Dr. Rideau emailed Mr. Patin and informed him that she would be taking leave in March 2017, and that she attempted to reach out to another doctor to replace her.  A week later, on September 1, 2016, Mr. Patin allegedly terminated Dr. Rideau.

The Complaint alleges two claims for relief: Interference under the FLMA; and Retaliation under the FLMA.  The Complaint seeks, among other forms of damages, liquidated damages and injunctive and equitable relief.

Beazley received notice of the Complaint on April 11, 2018.

## II.  **THE POLICY**

Beazley issued Beazley Remedy Policy No. W205D7170101 to Lafayette General Health System for the September 30, 2017 to September 30, 2018 **Policy Period** (the "Policy").  Policy Declarations, Items 1 and 2.  The Policy contains a $21 million Limit of Liability for All Coverages Under This Policy, and a $10 million Limit of Liability for the Employment Practices Liability Clause (the "EPL Clause"), subject to a $150,000 Retention.  Policy Declarations, Items 4 and 5.

## III.  **PRELIMINARY ASSESSMENT OF COVERAGE**

### A.  **EPL Clause, Section I.A.**

Subject to the other terms and conditions of the Policy, EPL Clause Section I.A. provides, in relevant part, that Beazley "shall pay on behalf of the **Insureds** all **Loss** resulting from any **Claim** first made against any



*EXHIBIT 2*

**Insured** and reported . . . during the **Policy Period** . . . for a **Wrongful Act**."[1]

The EPL Clause defines **Claim**, in relevant part, to mean "a written demand or request for monetary damages or non-monetary relief against any of the **Insureds**," as well as "a civil . . . proceeding . . . initiated against any of the **Insureds** . . . commenced by: a) the service of a complaint or similar pleading[.]" EPL Clause, Section II.B.(1) and (2).  The Complaint constitutes a **Claim**.

The Policy defines **Insured** to mean **Insured Persons** and the **Insured Organization**.  *See* EPL Clause, Section II.M.  **Insured Persons** include "all persons who were, now are, or shall be duty elected or appointed: 1. directors, officers, trustees, **Employees** or **Managers** of the **Insured Organization**[.]" EPL Clause, Section II.N.; *see also* Section II.E. (defining **Employee**).    **Insured Organization** means the **Named Insured** and its **Subsidiaries**.  *See* Policy Terms and Conditions, Section I.D.  The **Named Insured** is Lafayette General Health System.  *See* Policy Terms and Conditions, Section I.G., Declarations, Item 1; *see also* Policy Terms and Conditions, Section I.L. (defining **Subsidiary**).

The Complaint alleges that LGHS is the parent of LHV, and that Mr. Patin is Chief Administrative Officer of LHV, and the Senior Vice President of LGHS.  Beazley will treat LGHS, LHV and Mr. Patin as **Insureds** for purposes of this letter.  Please confirm if the allegations regarding the status of LHV, and the positions held by Mr. Patin, are accurate.  Please also confirm that Lafayette General Health System, Inc., the named Defendant, is the same entity as the **Named Insured**.  Meanwhile, Beazley reserves its rights.

The Policy defines **Wrongful Act**, in relevant part, to mean "**Inappropriate Employment Conduct**, **Discrimination**, **Harassment**, and/or **Retaliation** by any of the **Insureds** against an **Insured Person**[.]"  EPL Clause, Section II.X.

**Discrimination** is defined to mean "any actual or alleged termination of the employment relationship, demotion, failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, military status in violation of the Uniformed Services Employment Reemployment Rights Act

---

[1] Beazley has determined that none of the Policy's other Insuring Clauses have any arguable relevance to this matter.  However, in the event Lafayette believes one of the other Insuring Clauses could be relevant to this matter and would like Beazley to further evaluate potential coverage under such an Insuring Clause, please let me know and provide all pertinent information and documentation.  Beazley would be pleased to review any additional information or documents that are provided.



or any other basis which is or is alleged to be prohibited by federal, state or local law." EPL Clause, Section II.D.

**Harassment** means "actual or alleged unwelcome sexual advances, requests for sexual favors or other verbal, visual or physical conduct, including bullying, of a sexual or non-sexual nature, where such harassment is based on an **Employee's** race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis protected by federal, state or local law and is explicitly or implicitly made a condition of employment, used as a basis for employment decisions or performance, or creates a hostile, intimidating or offensive work environment or that interferes with performance." EPL Clause, Section II.J.

**Retaliation** means "any actual or alleged **Discrimination**, **Harassment**, and/or **Inappropriate Employment Conduct** against an **Employee** on account of such **Employee's** exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any governmental agency alleged violations of the law, or on account of the **Employee** having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law." EPL Clause, Section II.U.

**Inappropriate Employment Conduct** is defined, in relevant part, to mean:

1. actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful;

2. actual or alleged wrongful demotion, evaluation, deprivation of career opportunity, or discipline;

3. actual or alleged breach of an express written employment agreement, but only when such breach would otherwise constitute a **Wrongful Act**;

4. actual or alleged violation of the Family and Medical Leave Act;

&ast;&ast;&ast;

7. with respect to any of the foregoing items (1) through (6) of this definition; actual or alleged negligent hiring, retention or supervision, or failure to employ or promote, train, create or enforce adequate workplace or employment policies and procedures, or grant tenure or seniority[.]

&ast;&ast;&ast;

EPL Clause, Section II.K.

*EXHIBIT 2*



Based on the information provided to date, Beazley will advance **Defense Costs** that Lafayette incurs in connection with the *Rideau* Matter pursuant to a full reservation of rights under the Policy, including its rights under the foregoing provisions.

**B.      Other Policy Provisions and Issues**

We wish to bring to your attention a number of other Policy provisions and issues relevant to the Rideau Matter.  Beazley wishes to bring these provisions and issues to your attention at this time without prejudice to relying on other Policy provisions as its investigation continues.  Please note that by citing these provisions, Beazley expresses no opinion on the merits of the allegations, which remain unsubstantiated at this time.

First, the Policy only provides coverage for **Claims** first made and reported during the **Policy Period**.  *See* EPL Clause, Section I.A.  The Policy incepted on September 30, 2017.  The Complaint alleges that Dr. Rideau was terminated on or about September 1, 2016.  Please provide at your earliest convenience:

1.      copies of any and all demands or complaints made by Dr. Rideau;

2.      Dr. Rideau's personnel file.

In the meantime, Beazley reserves all rights as to when a **Claim** was first made against an **Insured**, and all its rights based on representations made in the Policy Application.  *See* Policy Terms and Conditions Section VIII.A.; *see also* Amend Definition of Application Endorsement.

Second, subject to the terms and conditions of the Policy, coverage is only provided under the EPL Clause for covered **Loss**.  EPL Clause, Section I.A. **Loss** is defined to mean "compensatory money which an Insured is legally obligated to pay as a result of a **Claim** including compensatory damages, compensatory judgments (including prejudgment and post judgment interest awarded against an Insured on that part of any judgment paid by [Beazley]), back pay, front pay, covered settlements, statutory attorney fees pursuant to a covered judgment against an **Insured**, **Defense Costs** and punitive and[] exemplary damages where insurable by law in the applicable jurisdiction most favoring coverage for punitive, exemplary or multiple damages."  EPL Clause, Section II.O.  Among other things, **Loss** shall not include:

1.      the cost of providing any remedial, preventative or non-monetary relief including, but not limited to, any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority, or to modify or adapt any building or property to be accessible or accommodating, or to be more accessible or accommodating, to any person, except that this provision does not apply to **Defense Costs** where non-monetary relief is sought;



2.  civil fines . . . , penalties, sanctions, multiple damages, liquidated damages . . . and statutory damages that are predicated upon a finding of willfulness;

3.  payroll or other taxes;

4.  any matters that are deemed uninsurable according to the law under which this policy is construed;

\*\*\*

6.  severance pay, commissions, bonuses, profit sharing, or benefits including but not limited to medical, stock options, vacation, holiday, and/or sick pay;

7.  future salary, wages, bonus, commissions and/or benefits resulting from a settlement of a **Claim**, judgment, order or award that results in the rehiring, promotion or reinstatement of an **Insured Person**;

8.  awards, costs, judgments, or orders resulting from contempt of court or violation of a court order or administrative decree; or

9.  any amounts incurred in defense of any **Claim** for which any other insurer has a duty to defend[.]

\*\*\*

EPL Clause, Section II.O.  The Complaint seeks injunctive and equitable relief.  The cost of providing non-monetary relief pursuant to judgment or settlement is not **Loss**.  The Complaint seeks liquidated damages.  Liquidated damages do not constitute **Loss**.  Beazley generally reserves its rights under the definition of **Loss**.

Third, the Complaint demands relief that may not constitute covered **Loss**.  Accordingly, Beazley reserves its rights under the Policy's Allocation provision, Section VI. of the Policy's EPL Clause.

Finally, Beazley requests that the *Rideau* Matter be reported to any other insurers whose policies may potentially apply.  Please provide us with a copy of any potentially applicable policy and copies of any correspondence with such insurers concerning this matter.  In the meantime, Beazley reserves its rights with respect to EPL Clause Section VII. and Terms and Conditions Section VIII.D.

## IV.    DEFENSE ARRANGEMENTS

Section V.A. of the Policy's EPL Clause provides, in pertinent part:

It shall be the duty of the **Insured** and not the duty of [Beazley] to defend **Claims**.  [Beazley] shall have the right and shall be given the opportunity to effectively associate with the **Insured** in the investigation, defense and settlement of any



**Claim** that appears reasonably likely to be covered in whole or in part hereunder.

Beazley received your recent request for our consent to your engagement of Michael Hebert with Becker and Hebert, LLC to defend this matter. We are considering this and will respond in as soon as we are able to review the same. In that vein, could you please provide the hourly rates charged for this firm?

Please note that **Defense Costs** must be reasonable and necessary, and consented to in advance by Beazley. EPL Clause II.C. Further, Beazley is only liable for that part of **Loss** arising from a **Claim** which is excess of the applicable Retention, and that such Retention shall be borne by the **Insureds**. Terms and Conditions, Section IV.A. The payment of **Defense Costs** by Beazley reduces and may totally exhaust the applicable Limit of Liability. Terms and Conditions, Section III.D; *see also* EPL Clause V.D.

Further, any advancement or payment of **Defense Costs** in connection with the *Rideau* Matter will be subject to Beazley's full reservation of rights under the Policy and applicable law, including but not limited to the right to cease advancement of **Defense Costs** upon Beazley's determination that coverage is not available under the Policy, and the right to seek reimbursement from the **Insureds** for all amounts Beazley may advance or pay in connection with the *Rideau* Matter should it be determined that coverage is not available under the Policy for all or some of those amounts.

## V.       OTHER MATTERS

Section V.B. of the Policy's EPL Clause provides that:

> The **Insureds** shall not settle any **Claim** . . . incur any **Defense Costs**, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation, without [Beazley's] prior written consent, which shall not be unreasonably withheld. [Beazley] shall not be liable for any settlement, **Defense Costs**, assumed obligation, admission or stipulated judgment to which it has not consented . . . .

*See also* Policy Terms and Conditions, Section X. (the **Insureds** "agree that they shall not take any action which in any way increases [Beazley's] exposure under this Policy."). Please note that Beazley will not be liable for any settlement made without its prior written consent (unless the **Insureds** are able to fully and finally dispose of, with prejudice, all **Claims** that are subject to one Retention for an amount not exceeding such Retention, including **Defense Costs**). In the meantime, Beazley reserves all rights under Policy's EPL Clause Section V.[2]

***

Beazley's coverage position is based on the information currently available to it. If you believe that Beazley has misapprehended any aspect of this matter, please let us know and provide us with any relevant

---

[2] *See also* Amend Settlement and Defense Clause Endorsement.



documentation, at which time Beazley would be pleased to review its position.  Please note further that Beazley fully reserves all of its rights under the Policy and applicable law, that the above discussion is not intended to be exhaustive, and there may be other terms and conditions of the Policy which, although not specifically mentioned in this letter, may apply to this matter.  Beazley reserves the right to assert any additional Policy term or condition that might be applicable or as circumstances may warrant as additional information becomes available.  Beazley's actions in investigating, evaluating, and/or monitoring this matter should not be construed as a waiver, estoppel, or other relinquishment of Beazley's rights to limit or deny coverage, nor as any admission of any obligation under the Policy.

We look forward to working with you towards the successful resolution of this matter.  Please do not hesitate to contact me should you have any questions.

Sincerely,

Adam Keating
**Beazley Group**
(860) 674-4607
Adam.Keating@beazley.com

cc:  Christine Bilbrey, Mary Meinert (via email)

beazley

June 12, 2019

**Via e-mail to:  grountree@lgh.org**

Gordon Rountree, Esq.
Senior Vice-President and General Counsel
Lafayette General Health System, Inc.
920 W. Pinhook, Third Floor
Lafayette, Louisiana  70503

Re:    Claimant:       Alecia M. Rideau, MD
       Insured:        Lafayette General Health System
       Policy:         Beazley Remedy Policy # W205D7170101
       Policy period:  30-Sep-2017  --  30-Sep-2018
       Lawsuit:        Alecia M. Rideau, MD vs. Lafayette Health Ventures, Inc., et al.

                       U.S. District Court, Western District of Louisiana, Lafayette Division
                       Civil Action No.: 6:18-cv-00473-TAD-PJH, filed 4/06/18
       Claim No.:      BEAZL100002936581

Steven D. Shaffer

Beazley  Group

30 Batterson  Park Road
Farmington, CT 06032
USA

T(860) 674 4634
F(860) 679 0247

info@beazley.com
www.beazley.com

Dear Mr. Rountree:

As you know, I am the assigned Claims Manager representing Beazley Insurance Company, Inc. ("Beazley") with regard to the claims of Alecia M. Rideau, MD, against Lafayette General Health System, Inc. ("LGHS"), et al.

Mr. Adam Keating, my predecessor in this matter, and I have previously exchanged emails, correspondence and telephone calls with Ms. Janet Smith Guidry of your office.

As you may recall, Mr. Keating acknowledged, with reservation of rights to all concerned, LGHS's claim for coverage by letter to you dated April 16, 2018.  Subsequently, on July 6, 2018, a letter setting forth Beazley's initial coverage analysis and reservation of rights was sent to Ms. Guidry.  This letter is in follow-up to our letters dated April 16, 2018, and July 6, 2018.

We take this opportunity to update Beazley's position regarding coverage under the above- referenced policy of insurance ("the Policy") concerning the claims set out in the above- referenced lawsuit ("the lawsuit").  Please note that this letter does not modify the terms and conditions of the Policy.  Nothing contained in this letter should be construed as an admission of coverage or liability by Beazley, or as a waiver, estoppel, or prejudice of any kind to Beazley's rights and defenses.  Should you have any questions or concerns after reading this letter, please feel free to contact me at any time.

Please note, the facts presently available to Beazley come to us in the form of documents such as pleadings, reports, correspondence, and other



*EXHIBIT 3*

documents or sources.  For purposes of this letter, we may redact, paraphrase, summarize, abbreviate, or abridge the contents of such sources of information.  Such redaction, paraphrasing, summarization, abbreviation or abridgment in this letter shall not constitute a re-statement, alteration, or interpretation of, or agreement or admission as to, the contents of such sources of information.

**IMPORTANT  POLICY PROVISIONS**

Important aspects of the Policy are set forth below:

As set forth in Mr. Keating's letter of July 6, 2018, the Policy is a **'claims made and reported'** policy; the **policy period is Sept. 30, 2017 – Sept. 30, 2018**.[1]  The policy provides four classes ("clauses") of coverage:
   a.  Directors, Officers and Entity Liability;
   b.  Regulatory Liability;
   c.  Employment Practices Liability; and
   d.  Fiduciary Liability.

Given the nature of Dr. Rideau's claims, as set out in the referenced lawsuit, we are interested only in section "c":  the 'Employment Practices Liability Clause".   Relevant parts of the Employment Practices Liability insuring clause are set out here:

   a.  Insuring clause "1.(A)":

       The Underwriters shall pay on behalf of the *Insureds* all *Loss* **resulting from any *Claim* first made against any *Insured* and reported in writing to the [Beazley] during the *Policy Period*** ...for a *Wrongful Act*.  [terms italicized here are defined in the Policy]

   b.  'Claim' is defined in relevant terms in this clause to mean "<u>a written demand or request for monetary damages or non-monetary relief</u> ...."

   c.  'Executive Officer'  is defined to mean: "the chief executive officer, chief operating officer, president, *Manager*, chief financial officer, in-house general counsel, risk manager, human resources staff, or an individual acting in a similar capacity ...."

   d.  'Inappropriate Employment Conduct' is defined in relevant terms to include:

   e.  "(1.) actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful;"  ***

   f.  "(4.) actual or alleged violation of the Family and Medical Leave Act."

   g.  'Insureds' is defined to mean "the *Insured Persons* and the *Insured Organization*'."

   h.  'Insured Persons' is defined to include "directors, officers, ... *Employees*..."

---

[1]     The policy allows purchase of an 'Optional Reporting Period', which would extend the reporting period for 12 months beyond Sept. 30, 2018.  However, (a) we have no information indicating that LGHS purchased the 'Optional Reporting Period'; and (b) the issue is irrelevant.



*EXHIBIT 3*

    i.   'Wrongful Act' is defined in relevant terms to mean "*Inappropriate Employment Conduct, Discrimination, Harassment*, and/or *Retaliation* by any of the *Insureds* against an *Insured Person* …."

    j.   Clause "V. SETTLEMENT AND DEFENSE" provides that "A.  **It shall be the duty of the *Insured* and not the duty of Underwriters to defend *Claims*.  The Underwriters shall have the right and shall be given the opportunity to effectively associate with the *Insured* in the investigation, defense and settlement of any *Claim*** …."

Important policy provisions appear in the 'Policy Terms and Conditions' clause; amongst these are the 'Notification' provisions[2] of this clause:

> **In the event any *Executive Officer* becomes aware that a *Claim* has been made against any of the *Insureds*, the *Insureds* shall, as a condition precedent to their rights to payment under this *Policy*, give to Underwriters notice in writing of such *Claim* <u>as soon as practicable</u>** …."

The Declarations section of the Policy sets forth:

    a.   The *Policy Period* is from: 30-Sep-2017  to:  30-Sep-2018.

    b.   The Employment Practices limit is $10,000,000.

    c.   The Employment Practices retention is $150,000.

    d.   Choice of Law: New York


### *IMPORTANT FACTS*

Some facts of which we have become aware to date are:

Plaintiff, Alecia M. Rideau, MD, is a radiologist specializing in interpretation of mammograms.   She was employed[3] by the insured hospital on October 1, 2014.[4] According to file materials, there were personality conflicts and difficulties that began almost immediately after Dr. Rideau's employment.   In an effort to accommodate, the hospital re-arranged the supervisory structure so that Rideau would report to **Al Patin** instead of her original supervisor, Craig Ortego.  The insured later hired another radiologist, Dr. Megan Daigle, to perform the same type of work as Rideau.   Roughly 14 - 16 months after Rideau's employment, on February 9, 2016, Rideau was herself diagnosed (by Dr. Daigle) with breast cancer. Nevertheless, problems between Daigle and Rideau caused Daigle such upset that

---

[2]      As amended by endorsement on form  "E08647 072016 ed"

[3]      She was originally employed by Lafayette Health Ventures, Inc. ("LHVI").  The employment contract was assigned to Lafayette General Medical Center ("LGMC") effective December 9, 2014.  LGMC is a wholly-owned subsidiary of the named insured, Lafayette General Health System ("LGHS").

[4]      Her federal court complaint alleges she was employed on December 1, 2014; the May 17, 2019, trial report of defense counsel, Michael D. Hebert, states that she was employed 'effective October 1, 2014'.



*EXHIBIT 3*

she, Daigle, threatened to resign.  Then controversies developed further over Rideau's requested FMLA leave for breast surgery.  Rideau took 10 weeks of paid leave (2 weeks paid vacation plus 8 weeks FMLA leave) from March 14 through May 23, 2016.  Next there were controversies over her request for additional FMLA leave to have reconstructive surgery.  Dr. Rideau was terminated effective **September 1, 2016**.  Dr. Rideau's annual salary was $400,000.  Upon termination of her employment contract, she was granted 6 months' severance ($200,000).

Plaintiff filed the lawsuit on April 6, 2018, "for damages and injunctive relief to redress the deprivation of rights secured to [plaintiff] … by the Family and Medical Leave Act of 1993 ("**FMLA**")".  Plaintiff makes two primary claims:

   a. "Interference":  The claim is that "defendants interfered with, restrained, and/or denied the exercise of … plaintiff's rights under the FMLA"; and

   b. "Retaliation":  The claim is that when plaintiff requested and took 8 weeks of FMLA leave and requested an additional 2 weeks, she engaged in "protected activity under the FMLA … to address as serious health condition".  "Defendants … discriminated and/or retaliated against plaintiff for exercising her FMLA rights, culminating in her termination from employment."

Plaintiff later (Jan. 8, 2019) amended her complaint to list the named defendants as:

   a. Lafayette Health Ventures, Inc. (the entity that originally employed plaintiff);

   b. Lafayette General Health System, Inc.;

   c. Lafayette General Medical Center, Inc.;

   d. Al Patin  (Patin was later dismissed on Summary Judgment based on the fact that he was not plaintiff's 'employer' and thus could not have liability under the FMLA).

We understand that a mediation is set for June 20, 2019, and that trial is set for July 15, 2019.


### *COVERAGE ISSUE*

As previously set forth, the Policy is a 'claims made and reported' policy, meaning that a 'Claim' must be 'first made' <u>against the insured</u> **and** reported <u>to the insurer</u> **during the policy period** (Sep. 30, 2017 –  Sep. 30, 2018).

<u>'Claim' is defined in the policy as 'a written demand or request for monetary damages or non-monetary relief against any of the Insureds</u>…."

Beazley acknowledges that LGHS 'reported' the filing of the lawsuit in April, 2018, during the policy period.

However, it is not at all clear that plaintiff's 'Claim' was 'first made' during the policy period.  In fact, there appear to be strong indications that plaintiff actually 'made a Claim' well



*EXHIBIT 3*

before September 30, 2017 (inception date of the Policy).  Primary amongst the indications that plaintiff made a claim long before September 30, 2017, is the fact that LGHS retained counsel, Mr. Michael Hebert, as early as September, 2016, almost one year prior to policy inception, to assist the hospital in defense of Dr. Rideau's claims or potential claims.  As far as we are aware, there was no report to Beazley of Dr. Rideau's 'Claims' until after she filed the lawsuit in April, 2018.

We have been supplied with copies of Mr. Hebert's billing invoices. As early as September 13, 2016, his billing refers to a conference with you "regarding details of Rideau termination and potential claims."  In October, 2016, there are references to Rideau's 'new counsel', 'new demands' and 'demand letter'.  In January - March, 2017, there are references to 'letter from Vicky Bowers' (plaintiff's counsel); preparation of responses to the 'Bowers letter'; 'response to Bowers letter' and "monetary demands in Bowers letter and amount for settlement offer'.

Accordingly, it appears that LGHS, via its retained counsel, was actively dealing with and defending 'Claims' being made/pursued by plaintiff.  If this is correct, there could be no coverage under the Policy because plaintiff's 'Claims' were not 'first made' against LGHS during the policy period.

## *RESOLUTION OF THE COVERAGE ISSUE*

At this time, with the outstanding coverage issue described above, Beazley is not prepared to meaningfully participate in the upcoming mediation on June 20, 2019.  As such, Beazley seeks your assistance and cooperation in resolving this issue.  In order to resolve the issue, we request your assistance in obtaining for us copies of the following classes of documents:

        a. All correspondence, emails, demands and/or other communications received by you, Ms. Guidry, or others in your office, from plaintiff or her attorneys, including demands and settlement offers.

        b. All correspondence, emails, demands and/or other communications received by any *Executive Officer* of the insured other than you from plaintiff or her attorneys, including demands and settlement offers.

        c. All correspondence, emails, demands and/or other communications received by LGHS' defense counsel (Mr. Michael Hebert) from plaintiff or her attorneys, including demands and settlement offers.

## *BASIS OF COVERAGE POSITION*

Beazley's present coverage position, as set forth in this and the earlier letters described above, is based upon our review of the factual information available to us at this time.  Of course, nothing in this letter should be construed as an admission of any of the claims or allegations of the plaintiff, as set out in the complaint, or as lending any credence thereto; however, our coverage position is necessarily based, in part, upon the said claims.  We reserve the right to amend, modify or supplement this coverage position as additional information becomes available.



Beazley reserves all rights regarding plaintiff's claims, including the right to deny coverage, if facts developed and/or applicable case law indicate that the Policy does not provide coverage.

1. <u>General Reservation of Rights</u>:  As indicated above, Beazley does not at present possess sufficient information regarding the plaintiff's claims to make a final determination as to coverage.  Beazley fully reserves all rights to change its coverage decision, should it receive further information requiring a change.  Please note that, by discussing the one coverage issue above (whether plaintiff's claim was both made and reported during the policy period), Beazley does not in any way waive or limit other policy defenses that may exist or become apparent or available as more information is obtained.  Beazley specifically reserves the right to raise any and all coverage issues and/or defenses at any time, and this reservation is not limited to the issues and/or matters discussed in this letter.

2. <u>Other insurance</u>:  Beazley has no information as to what other insurance coverages, if any, may be available to LGHS and/or other insureds under the Policy.  Beazley reserves the right to investigate and determine whether other coverages may be available and to limit its, Beazley's, insuring and/or defense obligations accordingly. If other available insurance coverages are known to be available to LGHS, please advise us immediately, and provide us with copies of the applicable policies.

3. <u>Investigation, defense, settlement, deductible</u>:  Beazley reiterates that it shall be the duty of LGHS and not the duty of Underwriters (Beazley) to defend *Claims*, and that Beazley shall have the right and shall be given the opportunity to effectively associate with the *Insured* in the investigation, defense and settlement of any *Claim* ….”  Beazley specifically reserves all rights in this regard.  In addition, Beazley shall not be liable for any settlement, Defense Costs, assumed obligation, admission or stipulated judgment to which they have not consented or for which the Insureds are not legally obligated as a result of a Claim for a Wrongful Act.

4. <u>Self-insured retention</u>:  Beazley notes that coverage under the Policy is subject to a retention of $150,000, and that no insuring obligation of Beazley is triggered until and unless that retention is properly exhausted by LGHS.  Beazley further reserves the right to require payment or reimbursement of any amount that properly constitutes a part of the said retention.

5. <u>Enforcement of policy, underwriting, and/or application duties, requirements and/or representations</u>:  Beazley reserves the right to enforce (by denial of coverage, if necessary, or by legal action, or otherwise) any and all obligations of any insured under the Policy, including, but not limited to:
   a. the obligations referred to in paragraph 3 above;
   b. the duty of all insureds to make, and/or to have made, accurate and complete representations in the underwriting and/or application for coverage process; and
   c. the duty of all insureds to comply with any on-going reporting or other policy requirements.

6. <u>Unknown claims</u>:  Beazley reserves all rights and defenses with regard to presently unknown claims.  This letter does not address potential claims (if any), not addressed herein, that may be held or made by the plaintiff or that may be made by other persons or entities.  The Policy may or may not provide coverage for any such presently unknown claims.



*EXHIBIT 3*

7. <u>Known claims</u>:  Beazley reserves all rights and defenses with regard to presently known claims, i.e., those set forth in the complaint.  This letter does not attempt to discuss all exclusions and limitations of the Policy with regard to "known" claims. There may be other policy provisions, exclusions and/or limitations that are applicable, or that may become applicable.  Beazley reserves the right to urge and/or enforce any and all policy and coverage defenses.

8. <u>Allocation of costs</u>:  Beazley reserves any and all rights it may have to allocate defense costs and/or indemnity payment between covered (if any) claims and non-covered claims.

9. <u>Reimbursement</u>:  Beazley reserves any rights it may have to seek reimbursement (from any insured)  of any payments (to the extent incurred or paid by Beazley) made by Beazley on behalf of any insured if it is determined that Beazley, in whole or in part, had no duty to cover, make or pay such payments or expenses.

10. <u>Cooperation and Settlement</u>:  Please note that the Policy requires all insureds to cooperate with Beazley in the investigation and/or settlement of claims.  Further, the Policy provides that no insured shall, except at its own cost, voluntarily make any payment, assume any covered obligation, or incur any expense without the consent of Beazley.  Beazley reserves all rights and defenses under these, and all other, policy provisions.

11. <u>Other policy provisions</u>:  Beazley reserves all rights and defenses under any and all other terms, provisions, limitations and exclusions in the Policy. This coverage position and continuing reservation of rights letter is not intended to be a complete recitation of all of the potentially applicable provisions, limitations and exclusions of the Policy or of the coverage defenses potentially inherent therein.  Beazley expressly reserves the right to assert any and all other policy provisions and defenses that may be applicable.  By discussing or inviting the attention of LGHS only to certain policy provisions or coverage issues, Beazley does not waive its rights and defenses under any other policy provisions, exclusions or defenses.

12. <u>Judicial determination</u>:  Beazley reserves the right to seek a judicial determination as to whether the Policy, or any Beazley policy, obligates Beazley to provide coverage to any alleged insured.

13. <u>Amendment</u>:  Beazley reserves the right to amend, modify or supplement this coverage position and continuing reservation of rights letter as additional information becomes available or may develop through investigation, discovery, pleadings, motions, or otherwise.

14. <u>No waiver</u>:  Nothing contained in this letter constitutes a waiver of any rights or defenses, all of which are fully reserved by Beazley.  No action taken by Beazley, on behalf of Beazley, or on behalf of any alleged insured, shall constitute either an admission of coverage under any policy or an acknowledgement of any obligation to pay indemnity, damages or defense costs under any policy, judgment or settlement. Beazley considers all rights and defenses under all policies and at law to be fully reserved.



*EXHIBIT 3*

Mr. Rountree, I look forward to your assistance in obtaining the documents requested above, and to working with you.  Should you have any questions or comments, please do not hesitate to contact me.

Kind Regards,

Steven D. Shaffer
**Beazley Group**
(860) 674-4634
Steve.Shaffer@Beazley.com

**cc:**     **Via E-Mail**
        Mary Meinert, Marsh
        [mary.meinert@marsh.com]

*EXHIBIT 3*

June 14, 2019

**Via e-mail to:  grountree@lgh.org**

Gordon Rountree, Esq.
Senior Vice-President and General Counsel
Lafayette General Health System, Inc.
920 W. Pinhook, Third Floor
Lafayette, Louisiana  70503

**Claim No.: BEAZL100002936581**
**Claimant: Alecia M. Rideau, MD**
**Risk Ref: W205D7170101**
**Insurer: Beazley Insurance Company, Inc.**
**Insured: Lafayette General Health System**

Steven D. Shaffer
Group Claims
T: +1 (860) 674-4634
F: +1 (860) 679-0247
steve.shaffer@beazley.com

Beazley Group
30 Batterson Park Road
Farmington, CT 06032
USA

T: +1 (860) 677 3700
F: +1 (860) 679 0247

info@beazley.com
www.beazley.com

Dear Mr. Rountree:

I write in follow-up to my letter dated June 12, 2019.

As will be discussed in more detail below, it appears that coverage is unavailable for this matter because the Claim was first made against the Insured prior to the September 30, 2017 inception date of the Policy.

This letter does not modify the terms and conditions of the Policy. Certain terms in this letter are defined terms under the Policy. Kindly refer to the Policy for the specific meanings of those terms.

We are in receipt of a copy of the letter dated Sept. 20, 2017, from Ms. Rideau's then attorney (Harold "Jacob" Rideau), directed to LGHS' defense counsel, Michael Hebert.  This letter contains a *settlement demand*, by which plaintiff Rideau proposes to settle a 'laundry list' of claims, including her FMLA claims, for the sum of $1,324,612.92.  Notably, plaintiff's counsel's letter sets out a lengthy explication of her 'Interference' and 'Retaliation' claims under the FMLA, the very same claims she is making in the referenced lawsuit.

More specifically, the Sept. 20, 2017, letter contains the following:

IV.        SETTLEMENT PROPOSAL

        Pursuant to 29 U.S.C. § 261, the FMLA provides that an employer who violates the statute may be liable to the affected employee for compensatory damages, interest, liquidated damages, attorney's fees and costs, as well as equitable relief. *See* 29 U.S.C. § 2617. Specifically, the aggrieved employee may recover "any wages, salary,

*EXHIBIT 4*

employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a) (1) (A) (i) (I). The FMLA also entitles an employee to recover the interest on any compensatory damages that he is awarded. 29 U.S.C. § 2617(a) (1) (A) (ii).

In addition, the employee may recover liquidated damages equal to the amount of compensatory damages for which the employer is liable. 29 U.S.C. § 2617(a) (1) (A) (iii). Moreover, pursuant to 29 U.S.C. § 2617(a) (3), the court must award reasonable attorney's fees, reasonable expert witness fees, and other costs, in addition to any judgment awarded to an aggrieved employee. 29 U.S.C. § 2617(a) (3). Finally, the statute provides that the court may award an aggrieved employee appropriate equitable relief, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a) (1) (B).

We submit that Dr. Rideau was terminated and, as a result, her contract was breached two (2) years and nine (9) months prior to the expiration date, in violation of the FMLA. Accordingly she is entitled to recover damages consistent with the amounts owed for the remainder of the contract term. This chart identifies the damages sustained:

[table of items omitted]

Please note that if further litigation is required in this matter, the court will likely award liquidated damages that will equate to twice the amount of compensatory damages, which Dr. Rideau would pursue in full. We would also seek equitable damages, as Dr. Rideau was denied the opportunity to refinance her mortgage due to the lump sum payment. In addition, interest will be applied and costs and attorney fees will significantly increase.

I recognize this document is lengthy; however, I feel the seriousness of this claim warranted a thorough and detailed explanation. I sincerely hope we can reach an amicable resolution for this matter. If LHVI desires to settle this matter without the necessity of our filing suit, we are prepared to settle this matter for **$1,324,612.92** plus attorney fees. In the event this matter is not resolved to our satisfaction within fifteen (15) days from the date of this letter, this offer shall be deemed withdrawn and we shall have no alternative but to pursue all available legal remedies in this regard.

As such, we draw your attention to the Declarations of the Policy, which provides, in relevant part:

**THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY SUBJECT TO ITS TERMS. <u>IT APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD</u> AND REPORTED IN WRITING TO THE UNDERWRITERS AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN THE END OF THE POLICY PERIOD, IN ACCORDANCE WITH AN APPLICABLE EXTENSION PERIOD, OR 60 DAYS AFTER THE POLICY PERIOD EXPIRATION DATE IN THE CASE OF A CLAIM FIRST MADE DURING THE LAST 60 DAYS OF THE POLICY PERIOD. . . .**

Section I.A. of the Employment Practices Liability ("EPL") Clause provides that Beazley shall pay on behalf of the **Insureds** all **Loss** resulting from any **Claim** first made against any **Insured** and reported in writing to Beazley during the **Policy Period** for a **Wrongful Act**.[1]

A **Claim** is defined in Section II.B. Definitions of the EPL Clause to mean:

1. a written demand or request for monetary damages or non-monetary relief against any of the **Insureds**, or to toll or waive a statute of limitations;

2. a civil, criminal, administrative, investigative or regulatory proceeding initiated against any of the **Insureds**, including any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by:

   a. the service of a complaint or similar pleading;

   b. the filing of a notice of charges, investigative order or similar document;

   c. written notice or subpoena from an investigatory authority identifying such **Insured** as an entity or person against whom a formal proceeding may be commenced;

3. in the context of an audit conducted by the Office of Federal Contract Compliance Programs, a Notice of Violation or Order to Show Cause; or

4. an arbitration or mediation or other alternative dispute resolution proceeding if the **Insured Organization** is obligated to participate in such proceeding or if the **Insured Organization** agrees to participate in such proceeding with Underwriters' prior written consent, such consent not to be unreasonably withheld.

   However, **Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

**Wrongful Act** is defined in Section II.R. Definitions of the EPL Clause to mean, in relevant part, **Inappropriate Employment Conduct**, **Discrimination**, **Harassment**, and/or

---

[1] Certain terms, including those in bold, are defined in the Policy. Kindly refer to the Policy for the meanings of defined terms.



**Retaliation** by any of the **Insureds** against an **Insured Person** or an applicant for employment of the **Insured Organization**.

Based on our review, the Sept. 20, 2017 *settlement demand* appears to indeed make a **Claim** against an **Insured** for a **Wrongful Act**, as defined in the referenced Policy.

As discussed above, the Policy only applies to **Claims** first made against an **Insured** during the **Policy Period** of September 30, 2017 to September 30, 2018.  Here, since it appears that a **Claim** was first made on September 20, 2017 when the **Insured** received the settlement demand from Plaintiff's counsel, the Insuring Agreement, as defined in Section I.A. of the EPL Clause, has not been triggered and coverage is unavailable for this matter.

Although we believe the above to be dispositive, if it is LGHS' position that there are facts and/or documents demonstrating  compliance with the 'claims made and reported' requirements of the Policy, thus triggering coverage for the relief Dr. Rideau seeks in her lawsuit, please advise and provide copies of relevant documentation.

As previously noted, we are aware that a mediation of Dr. Rideau's claims is set for June 20, 2019.  Further, as previously noted in my letter of June 12, and in light of the above, Beazley is not in a position to meaningfully participate in the mediation.  However, as requested, this letter will confirm that Beazley will not raise consent as a coverage defense with respect to a settlement of Ms. Rideau's claim.  Please understand, however, that Beazley also expressly reserves all rights under the Policy and applicable law to assess the reasonableness of any settlement that may be reached at the mediation and waives no rights in this respect.

Beazley reserves the right to raise coverage positions and defenses not discussed herein that may be applicable, including the right to supplement this letter and raise all Policy terms, conditions, and exclusions under the Policy.

If you have any questions regarding this letter, please contact me.

Sincerely,

Steve Shaffer
Specialty Lines

cc:     Andrea Lieberman (Marsh)
        [andrea.d.lieberman@marsh.com]

*EXHIBIT 4*