UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CERAIN UNDERWRITERS AT LLOYD'S, *Plaintiff* | CIVIL ACTION NO.: :19-CV-00817 |
| V | JUDGE MICHAEL J. JUNEAU |
| LAFAYETTE HEALTH VENTURES, INC., LAFAYETTE GENERAL HEALTH SYSTEM, INC., LAFAYETTE GENERAL MEDICAL CENTER, INC., and AL PATIN, *Defendants* | MAGISTRATE CAROL B. WHITEHURST |

**************************************************************************

## MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS

Respectfully submitted,

*/s/ James H. Gibson*
JAMES H. GIBSON (T.A.) (#14285)
JACQUELYN L. DUHON (#38199)
2448 Johnston Street (70503)
P.O. Box 52124
Lafayette, LA  70505
Phone:  (337) 761-6023
Fax:  (337) 761-6061
Email:  jimgibson@gibsonlawpartners.com
Email:jackieduhon@gibsonlawpartners.com
Counsel for Defendants, LAFAYETTE HEALTH VENTURES, INC., LAFAYETTE GENERAL HEALTH SYSTEM, INC., LAFAYETTE GENERAL MEDICAL CENTER, INC., and AL PATIN

# TABLE OF CONTENTS

Table of Contents .................................................................................................... i

Table of Authorities ................................................................................................ ii

Memorandum in Support of Motion to Dismiss Pursuant to Federal Rules of
Civil Procedure Rule 12(B)(6) ................................................................................ 1

    I.    Introduction and Factual Background ..................................................... 1

    II.    Law and Discussion .................................................................................. 5

        A.  Standard on a Rule 12(b0(6) motion ................................................ 5

        B.  Consideration of Defendants' exhibit ............................................... 5

    III.   Underwriters waived its policy defenses by failing to obtain a nonwaiver agreement while at the same time continuing to investigate/evaluate coverage defenses and provide a defense. Law and Discussion .............................................. 8

    IV.   The eleventh hour declination of coverage results in Underwriters waiving any coverage defenses and/or estopped from contesting insurance coverage ................................................................................................................. 10

Conclusion ............................................................................................................... 13

Certificate of Service ............................................................................................... 14

## TABLE OF AUTHORITIES

La. Fed.R.Civ., Rule 12(b)(6) .................................................................................. 1, 5, 6

*Wright, A. Miller, M. Kane,* 5B Fed. Prac. & Proc. Civ. §1357 3d ed. 2016) ....................... 6

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937, 1949 (2009) ................................................................................... 5

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 570 (2007) ........................................................................................ 5

*Bluestein & Sander v. Chicago Ins. Co.*
   276 F.3d 119 (2d Cir. 2002) .................................................................................. 11

*Causey v. Sewell Cadillac–Chevrolet, Inc.,*
   394 F.3d 285, 288 (5th Cir. 2004) ........................................................................... 5

*Central Mutual Insurance Co. v. Kammerling,*
   212 Ill. App. 3d 744, 156 Ill. Dec. 826, 571 N.E. 2d 806 (1991) ........................... 11

*Collins v. Morgan Stanley Dean Witter,*
   224 F.3d 496, 498 (5th Cir. 2000) ....................................................................... 5, 6

*Emery v. Progressive Cas. Ins. Co.,*
   2010-0327 (La. App. 1 Cir. 9/10/10, 7); 49 So.3d 17, 22 .............................. 12, 13

*Foret v. Terrebonne Towing Company.*
   632 So.2d 344 (La. App. 1st Cir. 1993) ................................................................. 8

*GFF Corp. v Associated Wholesale Grocers, Inc.,*
   130 F. 3d 1381 (10th Cir. 997) ............................................................................... 6

*Lazy Y Ranch, Ltd. V. Behrens,*
   546 F. 3d 580, 588 (9th Cir. 2008) .......................................................................... 7

*Lone Star Fund v. L.P.,*
   594 F. ed 383, 387 (5th Cir. 2010)) ........................................................................ 5

*In re Katrina Canal Breaches Litigation,*
   495 F. 3d 191, 205 (5th Cir. 2007) ......................................................................... 8

*Korte Const. Co. v. Am. States Ins.*
    322 Ill. App. 3d 451, 458; 750 N.E.2d 764, 769 (2001) ................................................. 12

*McConathy v. Dr. Pepper/Seven Up Corp.*
    131 F. 3d 558, 561 (5th Cir. 1998) ................................................................................. 5

*North American Capacity Insurance Company v Brister's Thunder Karts, Inc.*
    287 F.3d 412 (5th Cir. 2002) ............................................................................... 8, 10, 11

*North American Capacity Insurance Company v Debis Financial Service, Inc.*
    513 F.3d 466 (5th Cir., 2007) ......................................................................................... 8

*Peavy Co. v. M/V ANPA*
    971 F. 2d 1168 (5th Cir. 1992) ...................................................................................... 8

*Perez v. Dean Equip., Inc.*
    CIV A. 04-3094, 2006 WL 2662999) ..................................................................... 10, 13

*Pitts v. American Security Life Insurance Co.,*
    931 F.2d 351 (5th Cir. 1991) ........................................................................................ 12

*Phillips v. Prudential Ins. Co. of America,*
    714 F.3d 1017, 1020 (7th Cir. 2013) ............................................................................. 7

*Pope v Stanley*
    2018 WL 1954307, at *3 (W.D. La. 2018) .................................................................... 5

*Sams v Yahoo! Inc.*
    713 F.3d 1175, 1179 (9th Cir. 2013) ............................................................................. 7

*Scottsdale Insurance Company v Gulf Sea Temporaries, Inc.*
    1999 WL 130633 (E.D. La.) .......................................................................................... 8

*Scottsdale Insurance Company v. United Indus. & Const. Corp.,*
    137 F.Supp. 3d 167 (E.D.N.Y. 2015) ........................................................................... 11

*Steptore v. Masco Construction Co., Inc.*
    643 So.2d 1213 (La. 1994) ..................................................................... 8, 9, 10, 11, 13

*Tate v. CharlesAguillard Insurance & Real Estate, Inc.*
    508 So.2d 1371 (La. 1987) ...................................................................................... 9, 10

*Taylor v Books A Million, Inc.*
    296 F.3d 376, 378 (5th Cir. 2002) ................................................................................. 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  551 U.S. 308, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007) ...................................  5

*Transcon Inc. Co. v. J.S. Manta, Inc.*
  714 N.E. 2d 1277 (Ind. Ct. App. 1999) ............................................................................  12

*Underwriter's Insurance Company v Offshore Marine Contractors, Inc..*
  442 F. Supp. 2d 325 (E.D. La. 2006) ...............................................................................  8

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.,*
  987 F.2d 429, 431 (7th Cir.1993) .....................................................................................  6

*W. Am. Ins. Co. v. J.R. Const. Co.,*
  334 Ill. App.3d 75, 86; 777 N.E.2d 610, 619 (2002) ........................................................  12

*Wilkins v. Continental Casualty Company*
  2017 WL 1885815. ............................................................................................................  7

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS

MAY IT PLEASE THE COURT:

Defendants LAFAYETTE HEALTH VENTURES, INC., LAFAYETTE GENERAL HEALTH SYSTEM, INC., LAFAYETTE GENERAL MEDICAL CENTER, INC., and AL PATIN (collectively, "Defendants") respectfully submit this Memorandum in Support of its Motion to Dismiss the claims of Plaintiff, Certain Underwriters at Lloyd's subscribing to Policy Number W205D7170101, which are members of underwriting syndicate numbers 2623 and 623 managed by Beazley, (hereinafter "Underwriters"), against Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.  Introduction and Factual Background.

Lafayette General Health System purchased[1] a policy of insurance with Underwriters effective September 20, 2017 through September 20, 2018 ("the Policy Period"). The Policy provides four general classes of coverage to its insureds: 1) Directors, Officers and Entity Liability; 2) Regulatory Liability; 3) Fiduciary Liability; and 4) Employment Practices Liability. Suit was filed against the Defendants in a case styled *Alecia M. Rideau, M.D. v. Lafayette Health Ventures, Inc., Lafayette General Health System, Inc., and Al Patin* in the United States District Court for the Western District of Louisiana, Civil Action No. 00473 (the "underlying suit"). The underlying suit was filed on April 6, 2018 by Alecia M. Rideau and immediately tendered to Underwriters by Defendants for coverage in accordance with their insurance policy.  Within five (5) days of the Rideau suit being filed, Underwriters acknowledged notice of the claim from Defendants.[2]

---

[1] According to the policy submitted the cost of the policy was $100,078.00.
[2] Exhibit 1—April 16, 2018 letter from Underwriters.

1

In his April 16, 2018 letter Adam Keating wrote (in part) "We are in the process of *completing our coverage analysis* and *determining our obligations and duties under the policy*." (Emphasis supplied). Three months later, on July 6, 2018, Keating issued a reservation of rights letter[3] to LGHS and confirmed that "…Beazley [Underwriters] will advance Defense Costs incurred in connection with the Rideau Matter under the above-referenced Policy, in excess of the applicable Retention for this matter…." In the July 16, 2018 letter Underwriters outlines:

- That it will advance Defense Costs.[4]
- The policy limits and the retention amount.[5]
- A discussion of claims made and reported provisions.[6]
  - Underwriters specifically reserves its rights concerning the claims made and reporting provisions as it applied to the Rideau claim.[7]
- It highlights the definition of a Claim.[8]
- It highlights the definition of an Insured.[9]
- It highlights the definition of a Wrongful Act.[10]
- It discussed the various items of damages that are covered.[11]
- It requests that the Rideau matter be reported to other insurers.[12]

---

[3] Exhibit 2—July 6, 2018 "reservation of rights" letter from Underwriters. Although the letter does not bear the actual title of "reservation of rights," throughout the letter Underwriters specifically referencing that it is doing so (i.e. page 5, "In the meantime, Beazley reserves all rights as to when a **Claim** was first made against an **Insured**, and all its rights based on the representations made in the Policy Application.").
[4] Page 1.
[5] Page 2.
[6] Pages 2, 5.
[7] Id.
[8] Page 3.
[9] Page 3.
[10] Page 3.
[11] Pages 5-6.
[12] Page 6.

- It outlines the defense agreement and noted that it will consider approving (which it did later) Mike Hebert as defense counsel.[13]
- It pointed out that the Defendants are limited in settling the Rideau claim under the terms of the insurance policy.[14]

Thus, within the first ninety (90) days following the reporting of the claim, Underwriters were (or had) completed their investigation/policy evaluation to provide Defendants with the two letters (acknowledgment/reservation of rights). Underwriters homed in on important policy provisions—including the claims made and reported provisions (which it would over a year later use as a basis to decline coverage). Underwriters, however, failed to seek a nonwaiver agreement between it and Defendants, as required by Louisiana law.

While the Rideau litigation continued through the discovery and motion practice, Underwriters continued to abide by its earlier writings (acknowledgment/reservation of rights). Underwriters never sought to obtain a nonwaiver agreement from Defendants, as required by Louisiana law.

The Rideau litigation was set for a jury trial on July 15, 2019. Mediation in the Rideau litigation was set for June 20, 2019. On June 12, 2019 Underwriters issued an "updated" reservation of rights letter to Defendants.[15] This "update," sent eleven (11) months after the initial reservation of rights letter, still failed to comply with Louisiana law. This "update," sent eight (8) days before mediation and a month before trial, failed to comply with Louisiana law. This "update," like the earlier reservation of rights, failed to seek a nonwaiver agreement from the Defendants—which is required under Louisiana law.

---

[13] Page 7.
[14] Page 7.
[15] Exhibit 3—June 12, 2019 letter from Underwriters.

Forty-eight hours after Underwriters sent its "updated" *reservation of rights* letter to Defendants, it sent a *declination of rights* letter to Defendants.[16] This untimely declination of rights sent only two (2) days after the "updated" reservation of rights has severely prejudiced the rights of Defendants, coming only days before a scheduled mediation (which had to be cancelled) and weeks before a scheduled trial.[17] Throughout the time from the tendering of the claim to Underwriters (April 2018) through the "updated" reservation of rights letter (June 12, 2019), Defendants continued to believe that Underwriters would afford coverage for the Rideau claim. Throughout this fourteen (14) month period Defendants had done everything asked of them by Underwriters, had the defense counsel (and his rates) approved by Underwriters and were obviously lulled into a sense of security of coverage as the mediation and trial were approaching.

At no time during the fourteen (14) months between receipt of the notice of the claim and the declination of coverage did Underwriters seek or obtain a nonwaiver agreement from Defendants with respect to its ongoing assessment of the litigation. Instead Underwriters, fourteen months after being placed on notice of the claim, and less than thirty days before trial, improperly denied coverage and defense costs.

As a result of Underwriters failure to obtain a nonwaiver agreement (despite its having notice of the claim for over 14 months), Underwriters complaint seeking a declination of no coverage fails to state a claim upon which relief can be given. By law, any possible coverage isuses that Underwriters contends may be at issue, has been waived by its failure to secure a nonwaiver agreement between it and the Defendants. Moreover, Underwriters eleventh-hour

---

[16] Exhibit 4—June 14, 2019 letter from Underwriters.
[17] Following the receipt of the declination letter a motion to continue the trial was filed. The trial was rescheduled and is currently set for October 21, 2019.

decision to decline coverage results in it being barred by estoppel and/or waiver of any coverage defenses.

II.  **Law and Argument**

   a.  **Standard on a Rule 12(b)(6) Motion.**

A claim may be dismissed under Rule 12(b)(6) when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief.[18] A complaint must be dismissed if it does not allege sufficient factual matter that, if accepted as true, "state[s] a claim to relief that is plausible on its face."[19] Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[20]

   b.  **Consideration of Defendants' exhibits.[21]**

While the focus of a 12(b)(6) motion is on the allegations in the complaint, federal courts, including the Fifth Circuit, have approved of considering documents a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to its claim.[22] For example, in *Lone Star Fund V, L.P. v. Barclays Bank PLC*, the Fifth Circuit identified expanded categories beyond the pleadings to include documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim as proper for court scrutiny in a motion to dismiss under 12(b)(6).[23]

---

[18] *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr.Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir.1998).
[19] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).
[20] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).
[21] It is pointed out that Underwriters complaint also reference/attach what Defendants attach as Exhibits 1 (Underwriters B) and 2 (Underwriters C).
[22] *See, e.g. Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see also Pope v. Stanley,* 2018 WL 1954307, at *3 (W.D. La. 2018), report and recommendation adopted, 2018 WL 1936697 (W.D. La. 2018). The Supreme Court permits consideration of documents incorporated in the complaint by reference and matters subject to judicial notice in determining a motion to dismiss under Rule 12(b)(6). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007);
[23] 594 F. 3d 383, 387 (5th Cir. 2010).

Accordingly, in *Collins v. Morgan Stanley Dean Witter*, reviewing the grant of a motion to dismiss supported by documents attached to the defendant's motion to dismiss, the Fifth Circuit instructed:

> We note approvingly, however, that various other circuits have specifically allowed that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993). In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.[24] (Footnote omitted).

This is consistent with a leading authority who has recognized that numerous cases across the federal circuits have allowed consideration of matters incorporated by reference or integral to the claim, documents subject to judicial notice, concessions made by the plaintiff in opposition memoranda, matters of public record, orders, documents appearing in the record of the case, and exhibits attached to the complaint to be considered on a motion to dismiss by the district judge without necessitating conversion into a summary judgment motion.[25] The reason behind allowing consideration of documents in these categories is that they are all deemed to be part of the complaint by implication.[26]

Indeed, in *GFF Corp. v. Associated Wholesale Grocers, Inc.*, the Tenth Circuit rejected plaintiff's claim that the district court erred in failing to convert defendant's 12(b)(6) motion into one for summary judgment in light of its consideration of outside material.[27] Plaintiff's suit was one in breach of contract and fraud, but the plaintiff did not attach to its complaint or amended complaint the letter consistently referred to as the basis for its claims. Instead, the letter was

---

[24] 224 F. 3d 496, 498-99 (5th Cir. 2000).
[25] *Wright, A. Miller, M. Kane*, 5B Fed. Prac. & Proc. Civ. §1357 (3d ed. 2016).
[26] *Id*.
[27] 130 F. 3d 1381 (10th Cir. 1997).

submitted by defendants in support of the 12(b)(6) motion. The Court explained that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."[28] The Court reasoned:

> If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.[29]

Similarly, in the recently decided *Wilkins v. Continental Casualty Company*, plaintiff sued her deceased mother's attorney for negligence related to the preparation of her mother's will and trust.[30] Yet, plaintiff did not attach the will or the trust to the complaint.[31] This Court allowed the defendants to attach the will and trust to their Rule 12(b)(6) motion to dismiss without converting it to a motion for summary judgment, reasoning the will and trust were referenced in the complaint and central to the claim. [32]

---

[28] 130 F. 3d at 1384.
[29] *Id.* at 1385. The Seventh Circuit similarly recognized that to the extent an exhibit attached to or referenced in or by the plaintiff's complaint contradicts the complaint's allegations, the exhibit takes precedence. *Phillips v. Prudential Ins. Co. of America*, 714 F. 3d 1017, 1020 (7th Cir. 2013). Accord *Lazy Y Ranch Ltd. v. Behrens*, 546 F. 3d 580, 588 (9th Cir. 2008)(court is generally limited to the allegations of the complaint which are accepted as true and construed in a light most favorable to the plaintiff unless the allegations are contradicted by documents referenced in the complaint or properly subject to judicial notice). *See also Sams v. Yahoo! Inc.*, 713 F. 3d 1175, 1179 (9th Cir. 2013) (court permitted to consider documents not attached to the complaint where the documents were critical to the plaintiff's suit and there was no factual dispute as to their contents or authenticity).
[30] *Wilkins v. Cont'l Cas. Co.*, 2017 WL 1885815, at *1 (W.D. La. 2017), *report and recommendation adopted*, 2017 WL 1901411 (W.D. La. 2017).
[31] *Id.* at *2.
[32] *Id.*

The Fifth Circuit has specifically held that insurance contracts that were attached to Rule 12(b)(6) motions to dismiss, were referred to in the complaints, and were central to plaintiffs' claims, could be considered in assessing motions to dismiss for failure to state claim.[33] Defendants reliance on Underwriters correspondence[34] as support for this motion is proper and are central and necessary for an adjudication of the Declaratory Action.

### III. **Underwriters waived its policy defenses by failing to obtain a nonwaiver agreement while at the same time continuing to investigate/evaluate coverage defenses and provide a defense.**

An insurer may meet its obligation of providing a defense while simultaneously protecting its own interest in contesting coverage by obtaining a nonwaiver agreement from its insured. *Scottsdale Insurance Company v. Gulf Sea Temporaries, Inc.* 1999 WL 130633 (E.D. La.). If an insurer with knowledge of facts indicating non-coverage voluntarily assumes the insured's defense without a nonwaiver agreement, the insurer effectively waives its defenses to coverage. *Steptore v. Masco Construction Co., Inc*, 643 So.2d 1213 (La. 1994); *North American Capacity Insurance Company v. Debis Financial Services, Inc*., 513 F.3d 466 (5th Cir, 2007); *North American Capacity Insurance Company v. Brister's Thunder Karts, Inc.*, 287 F.3d 412 (5th Cir, 2002); *Peavy Co. v. M/V ANPA*, 971 F.2D 1168 (5th Cir. 1992); *Underwriter's Insurance Company v. Offshore Marine Contractors, Inc*., 442 F.Supp.2d 325 (E.D. La. 2006). Additionally, the insurer's notice of its intent to avail itself of the defense of non-coverage must be timely. *Foret V. Terrebonne Towing Company*, 632 So.2d 344 (La. App. 1st Cir. 1993). Waiver is the voluntary or intentional relinquishment of a known right; when an insurer fails to raise, at the outset, a known defense to a

---

[33] *In re. Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (even though the insurance contracts were not attached to the complaints, defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims such that they may be considered in assessing the motions to dismiss).
[34] Exhibits 1, 2, 3 & 4.

claim, that defense is waived.[35] The question then is whether these facts give rise to such a waiver, and they very clearly do.

Waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation, and in order to reinforce the role of the lawyer as the loyal advocate of the client's interest.[36] Moreover waiver principles are designed to present this exact situation, where an insurer lulls an insured (i.e. approving defense counsel) into a false sense that the claim is covered. The Louisiana Supreme Court in *Steptore* directly addressed the issue of waiver and estoppel regarding insurance coverage defenses. As in the present case, the underwriter (Ocean Marine) in *Steptore*, had notice of a potential coverage defense upon service of the original Petition for Damages. However, Ocean Marine assumed the defense of its insured without reserving rights or otherwise protecting its interests and continued with the representation even after its own interests were adverse to that of the assured.

Six months after undertaking the defense, Ocean Marine denied coverage on the grounds that the assured breached a navigation warranty contained in the policy. The court held that Ocean Marine had waived any coverage defenses under the policy, when, with knowledge of facts indicating non-coverage (i.e. the Petition for Damages), it assumed and continued with the insured's defense without obtaining a nonwaiver agreement. The court in *Steptore* referenced an earlier Louisiana Supreme Court decision, *Tate v. Charles Aguillard Insurance & Real Estate, Inc.*, 508 So.2d 1371 (La. 1987).

In *Steptore*, the insurer's six-month involvement in the defense of the litigation, in the absence of a nonwaiver agreement, was found to have waived any coverage defenses the insurer

---

[35] *Id.* at 357.
[36] *Steptore*, 643 So.2d at 1216.

9

would have otherwise been able to avail itself of. In this case, Underwriters' participation in the defense of this litigation more than doubled the time that was involved in the Supreme Court's decision in *Steptore*—14 months versus 6 months. Moreover, Underwriters was aware of facts sufficient to author a reservation of rights letter 11 months before the declination letter, yet never sought nor obtained a nonwavier agreement. To the contrary, Underwriters chose not to obtain a nonwaiver agreement and instead to deny coverage, less than a month before the trial of this case and only days before a scheduled mediation. *See also Perez v. Dean Equip., Inc.,* CIV.A. 04-3094, 2006 WL 2662999, at *3 (E.D. La. Sept. 15, 2006), aff'd, 262 Fed.Appx. 622 (5th Cir.2008) ("When [insurer] gained knowledge of facts indicating that it had a right to deny coverage, under Louisiana law, it was required to obtain a nonwaiver agreement reserving its rights."). The failure of Underwriters to secure a nonwaiver agreement while continuing to allegedly evaluate coverage and participating in the defense of the case, under *Steptore*, mandates that this Honorable Court find that any coverage defenses have been waived.

IV. **The eleventh hour declination of coverage results in Underwriters waiving any coverage defenses and/are estopped from contesting insurance coverage**.

The principles of waiver/estoppel against an underwriter apply to any provision in the policy.[37] In *Brister's,* the U.S. Fifth Circuit Court of Appeals upheld the district court's finding of coverage by an insurer (North American) whose policy had been cancelled by the assured and was not even in effect at the time the underlying personal injury damage claim arose. The U.S. Fifth Circuit, relying on the Louisiana Supreme Court decisions in *Stepore* and *Tate,* reiterated the position that waiver may apply to any provision of an insurance contract when an insurer

---

[37] *North American Capacity Insurance Company v. Brister 's Thunder Karts, Inc.*, 287 F.3d 412 (5th Cir. 2002).

knowingly and voluntarily elects to relinquish its right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered.[38]

In *Brister's*, North American was aware that the underlying personal injury claim had occurred more than a year after its coverage of Brister's had terminated. However, like in *Steptore* and the instant case, the insurer did not outright deny coverage, nor was there a nonwaiver agreement. In fact, North American appointed counsel and provided defense to *Brister's*, then waited three years before denying coverage. The court held that North American by its actions toward the assured had waived any coverage defenses under its policy. The holding in *Brister's* would also preclude Underwriters from asserting that waiver/estoppel does not apply in this instance.

Cases from around the country have likewise held that if an insurer delays on declining coverage then it cannot avail itself of policy provisions that otherwise might result in there being no coverage. For example:

- In *Central Mutual Insurance Co. v. Kammerling*, 212 Ill.App.3d 744, 156 Ill.Dec. 826, 571 N.E.2d 806 (1991), wherein the court held a six-month delay in filing a declaratory judgment action is unreasonable, the insurer had notice of the claim about 10 months before it filed for a declaratory judgment and about six months after it had already acknowledged that it had a duty to defend the insured.

- Under New York common law, an insurer that undertakes the defense of an insured may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffered prejudice as a result of that delay. *Scottsdale Ins. Co. v. United Indus. & Const. Corp.,* 137 F.Supp.3d 167 (E.D.N.Y.2015); *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119 (2d Cir.2002).

- Commercial general liability (CGL) insurer's 15-month delay in asserting a coverage defense and withdrawing from an additional insured's defense against an underlying tort suit after it learned of the facts supporting the coverage defense precluded it from relying on the coverage defense under the doctrines of estoppel and implied waiver, where the insurer controlled all aspects of the underlying defense--including discovery, litigation strategy, and settlement--without reserving its right to assert a coverage defense, and the additional insured relied on the insurer to control and conduct its defense until resolution

---

[38] *Brister's* at 416.

of the underlying suit. *Transcon. Ins. Co. v. J.L. Manta, Inc.*, 714 N.E.2d 1277 (Ind. Ct. App.1999).

- In *Korte Const. Co. v. Am. States Ins.,* 322 Ill.App.3d 451, 458; 750 N.E.2d 764, 769 (2001), the court held that an insurer who did not act for twelve months was estopped from asserting any coverage defenses.

- In *W. Am. Ins. Co. v. J.R. Const. Co.*, 334 Ill.App.3d 75, 86; 777 N.E.2d 610, 619 (2002), the court held that an insurer who did not act for twenty-one and a half months was also estopped.

Despite Underwriters' knowledge of facts which, if true, would have given rise to the very same defenses asserted here in this action, it continued the same course of action it had from the outset. Underwriters' entire actions since notification of the claim are clearly inconsistent with preservation of its policy defenses. This is sufficient, but Underwriters went much farther than simple acquiescence. Waiver describes the act, or the consequences of the act, of one party only.[39] Since there was never a nonwaiver agreement signed by the parties, and the declination was issued by Underwriters untimely (thus estopping it from asserting coverage issues), coverage should be found and the declaratory action filed by it should be denied.

While Underwriters did provide a reservation of rights (but not a nonwaiver agreement) letter a year before it made the decision to deny coverage, such action is not sufficient under the facts of this case. Notably, in *Emery v. Progressive Cas. Ins. Co.,* the court rejected Progressive's argument that, after it had knowledge of facts indicating noncoverage under the insurance policy, its only duty was to issue a reservation of rights letter and that once it had done so, it was then permitted to provide only one attorney to represent both itself and its insured while it further investigated the coverage issue.[40] The court stated that the actions on the part of Progressive constituted conduct "so inconsistent with an intent to enforce its right to assert its coverage defense

---

[39] *Pitts v. American Security Life Insurance Co.*, 931 F.2d351 (5th Cir. 1991).
[40] 2010-0327 (La.App. 1 Cir. 9/10/10, 7); 49 So.3d 17, 22.

as to induce a reasonable belief that the right had been relinquished." *Id*. *Emery* can stand for the proposition that a reservation of rights letter without subsequent actions demonstrating such intent to assert the coverage defense will waive the defense.

The cases cited above clearly stand for the proposition that an insurer cannot delay in its decision to deny coverage to the detriment of its insureds. Here, Underwriters acknowledged the claim within days of it being made, issued a reservation of rights letter within 90 days, then waited a year (days before a mediation and less than a month before trial) before deciding to deny coverage. All the time Underwriters never sought or acquired a nonwaiver agreement, as required by Louisiana law. The actions of Underwriters demonstrate that it cannot, under Louisiana law, deny coverage in this case.

## Conclusion

Within weeks of Defendants tendering this claim to Underwriters a reservation of rights letter was issued which included a discussion of the claims made and reporting issues/language. Underwriters chose not to secure a nonwaiver agreement. Thereafter Underwriters lulled Defendants into the belief that there was coverage.[41] Only days before the mediation was set and weeks before the trial (and only 2 days after issuing an "updated" reservation of rights letter) did Underwriters issue its declination of coverage.

For an insurer to avoid waiving coverage defenses, it must secure a nonwaiver agreement. *Steptore v Masco*, 643 So. 2d 1213 (La. 1994). Underwriters failed to obtain a nonwaiver agreement and did not timely decline coverage. *See also Perez v. Dean Equip., Inc.,* CIV.A. 04-3094, 2006 WL 2662999, at *3 (E.D. La. Sept. 15, 2006), aff'd, 262 Fed.Appx. 622 (5th Cir.2008) ("When [insurer] gained knowledge of facts indicating that it had a right to deny coverage, under

---

[41] i.e. requiring that defense counsel and his rates be approved.

13

Louisiana law, it was required to obtain a nonwaiver agreement reserving its rights."). Moreover, Underwriters actions in handling the claim for fourteen (14) months before deciding to issue a declination letter, only weeks before trial, operates as a waiver of any coverage provisions that would have otherwise prevent coverage. Accordingly, the Complaint fails to state a claim against Defendants and, consequently, the Declaratory Action should be denied/dismissed, and there should be a finding of coverage in favor of the Defendants.

Respectfully submitted,

*/s/ James H. Gibson*
JAMES H. GIBSON (T.A.) (#14285)
JACQUELYN L. DUHON (#38199)
2448 Johnston Street (70503)
P.O. Box 52124
Lafayette, LA 70505
Phone: (337) 761-6023
Fax: (337) 761-6061
Email: jimgibson@gibsonlawpartners.com
Email:jackieduhon@gibsonlawpartners.com
Counsel for Defendants, LAFAYETTE HEALTH VENTURES, INC., LAFAYETTE GENERAL HEALTH SYSTEM, INC., LAFAYETTE GENERAL MEDICAL CENTER, INC., and AL PATIN

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Lafayette, Louisiana, this 4TH day of September, 2019.

*/s/ James H. Gibson*
JAMES H. GIBSON