UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, *Plaintiff* | CIVIL ACTION NO.: :19-CV-00817 |
| V | JUDGE MICHAEL J. JUNEAU |
| LAFAYETTE HEALTH VENTURES, INC., LAFAYETTE GENERAL HEALTH SYSTEM, INC., LAFAYETTE GENERAL MEDICAL CENTER, INC., and AL PATIN, *Defendants* | MAGISTRATE CAROL B. WHITEHURST |

*************************************************************************

## <u>MEMORANDUM IN SUPPORT OF<br>DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT[1]</u>

Respectfully submitted,

*/s/ James H. Gibson*
JAMES H. GIBSON (T.A.) (#14285)
JACQUELYN L. DUHON (#38199)
2448 Johnston Street (70503)
P.O. Box 52124
Lafayette, LA  70505
Phone:  (337) 761-6023
Fax:  (337) 761-6061
Email:  jimgibson@gibsonlawpartners.com
Email:jackieduhon@gibsonlawpartners.com
Counsel for Defendants, LAFAYETTE HEALTH VENTURES, INC., LAFAYETTE GENERAL HEALTH SYSTEM, INC., LAFAYETTE GENERAL MEDICAL CENTER, INC., and AL PATIN

---

[1] Movers are only seeking a ruling as to coverage, not as to any claims for Underwriters violation of its duty of good faith and fair dealing, and any penalties and attorney fees that might be owed.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................. ii

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT ...................................................................................... 1

    Factual Background ...................................................................... 2

    Summary Judgment Standard ....................................................... 7

    Law and Application ..................................................................... 8

      I. Underwriters waived its policy defense under its insurance policy by failing to obtain a nonwaiver agreement while at the same time continuing to investigate/evaluate coverage defenses, participate in and provide a defense and solely control settlement of the *Rideau* litigation ................................................. 8

      II. The eleventh-hour declination of coverage results in Underwriters waiving any coverage defenses and are estopped from contesting insurance coverage .......... 10

      III. The *Rideau* claim was properly and timely submitted to Underwriters; thus, there is insurance coverage in favor of LGHS .................................................. 18

    The *Rideau* litigation is a Claim as defined by the insurance policy ............................... 18

CONCLUSION ................................................................................... 26

CERTIFICATE OF SERVICE ............................................................. 28

# TABLE OF AUTHORITIES

La. Civ. Code art. 2056 ..................................................................................................  26


*Aloe Creme Labs., Inc. v. Francine Co.,*
    425 F.2d 1295, 1296 (5th Cir. 1970) .......................................................  17

*Badon v. R J R Nabisco Inc.,*
    224 F.3d 382, 394 (5th Cir. 2000 .............................................................  7

*Bonin v. Westport Ins. Corp.,*
    2005-0886 (La. 5/17/06, 5); 930 So.2d 906, 911 ....................................  25

*Bluestein & Sander v. Chicago Ins. Co.*
    276 F.3d 119 (2d Cir. 2002) ....................................................................  12

*Boudreaux v. Banctec, Inc.,*
    336 F.Supp.2d 425, 430 (E.D. La. 2005) ................................................  7

*Cadwallader v. Allstate Ins. Co.,*
    2002-1637 (La. 6/27/03, 4); 848 So.2d 577, 580 ....................................  26

*Carrier v. Reliance Ins. Co.,*
    1999-2573 (La. 4/11/00, 12); 759 So.2d 37, 43 .......................................  26

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 317, 108 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986) ..........  7

*Central Mutual Insurance Co. v. Kammerling,*
    212 Ill. App. 3d 744, 156 Ill. Dec. 826, 571 N.E. 2d 806 (1991) ...........  11

*Cinel v. Connick,*
    15 F. 3d 1338, 1343 n. 6 (5th Cir. 1994) .................................................  17

*Emery v. Progressive Cas. Ins. Co.,*
    2010-0327 (La. App. 1 Cir. 9/10/10, 7); 49 So.3d 17, 22 ........................  13

*Engstrom v. First Nat. Bank of Eagle Lake,*
    47 F.3d 1459, 1462 (5th Cir. 1995) .........................................................  7

*Foret v. Terrebonne Towing Company.*
    632 So.2d 344 (La. App. 1st Cir. 1993) ...................................................  8

*Gastar Exploration LTD. V U. S. Specialty Insurance Company*,
    412 S. W. 3d 577 (2013)................................................................................. 23, 24, 25

*Haygood v. Begue*,
    2014 WL 1320152, at *1 (W.D. La. 2014)............................................... 17

*Hebert v. Webre*,
    2008-0060 (La. 5/21/08, 5); 982 So.2d 770, 774..................................... 25

*Henly v. Phillips Abita Lumber Co.*,
    2006-1856 (La.App. 1 Cir. 10/3/07, 5); 971 So.2d 1104, 1108–09......................... 26

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,
    379 F.3d 293, 301 (5th Cir. 2004) .............................................. 7

*Jones v. Washington Nat. Ins. Co.*,
    2 So.2d 696, 699 (La. Ct. App.1941)........................................ 26

*Korte Const. Co. v. Am. States Ins.*
    322 Ill. App. 3d 451, 458; 750 N.E.2d 764, 769 (2001)............................ 12

*Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*,
    630 So.2d 759, 764 (La.1994) ............................................... 26

*North American Capacity Insurance Company v Brister's Thunder Karts, Inc.*
    287 F.3d 412 (5th Cir. 2002) ............................................8, 10, 11

*North American Capacity Insurance Company v Debis Financial Service, Inc.*
    513 F.3d 466 (5th Cir., 2007) ............................................... 8

*Peavy Co. v. M/V ANPA*
    971 F. 2d 1168 (5th Cir. 1992) .............................................. 8

*Perez v. Dean Equip., Inc.*
    CIV A. 04-3094, 2006 WL 2662999)....................................... 10, 26

*Pitts v. American Security Life Insurance Co.*,
    931 F.2d 351 (5th Cir. 1991) ............................................... 13

*Scottsdale Insurance Company v Gulf Sea Temporaries, Inc.*
    1999 WL 130633 (E.D. La.) ............................................... 8

*Scottsdale Insurance Company v. United Indus. & Const. Corp.*,
    137 F.Supp. 3d 167 (E.D.N.Y. 2015) ...................................... 12

*Steptore v. Masco Construction Co., Inc.*
  643 So.2d 1213 (La. 1994) ...............................................................8, 9, 10, 11, 26

*Tate v. Charles Aguillard Insurance & Real Estate, Inc.*
  508 So.2d 1371 (La. 1987) ...........................................................  9, 10

*Transcon Inc. Co. v. J.S. Manta, Inc.*
  714 N.E. 2d 1277 (Ind. Ct. App. 1999)........................................  12

*Underwriter's Insurance Company v Offshore Marine Contractors, Inc..*
  442 F. Supp. 2d 325 (E.D. La. 2006).........................................  8

*Wilks v. Allstate Ins. Co.,*
  177 So. 2d 790, 794 (La. Ct. App. 3d Cir. 1965).....................................  26

*W. Am. Ins. Co. v. J.R. Const. Co.,*
  334 Ill. App.3d 75, 86; 777 N.E.2d 610, 619 (2002)................................  12

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

LAFAYETTE HEALTH VENTURES, INC., LAFAYETTE GENERAL HEALTH SYSTEM, INC., LAFAYETTE GENERAL MEDICAL CENTER, INC., and AL PATIN (collectively, LGHS), respectfully submits this memorandum in support of their motion for partial summary judgment.  For the reasons addressed herein, the motion should be granted, and all claims of plaintiff should be summarily dismissed, and this Honorable Court should issue a ruling that the Certain Underwriters at Lloyd's (Underwriters) insurance policy affords coverage in favor of LGHS concerning the *Rideau* claim/litigation.[2]

In this motion LGHS contends that:

- Underwriters have waived (and/or are barred by estoppel) any opportunity to avail themselves of any coverage defenses by:

  - Participating in the defense of the underlying litigation (*Rideau*) as well as other actions/inactions for fourteen (14) months, and by failing to secure a nonwaiver agreement between it and LGHS, as required by Louisiana law.

  - Delaying for fourteen (14) months before deciding to decline coverage, with the declination being issued only days before a scheduled mediation and a month before the trial of the *Rideau* litigation.[3]

- Underwriters have neglected to properly read its insurance policy in issuing the June 14, 2019 declination letter and in filing this Declaratory Action.  LGHS properly and

---

[2] LGHS has filed a cross claim against Underwriters seeking coverage and damages associated with the bad faith handling of the claim.

[3] As a result of the untimely declination letter issued by Underwriters, LGHS was forced to seek a continuance of the trial (based on the improper and untimely issuance of the declination letter).  The Motion was granted. The Trial has been rescheduled for October 21, 2019 (see *Rideau* litigation record, Doc. R. 1-2).

timely submitted the claim to Underwriters.  The insurance policy clearly affords coverage in favor of LGHS.  To the extent there is any ambiguity in the insurance policy, this must be read in favor of insurance coverage in favor of LGHS.

## Factual Background

LGHS purchased[4] a policy of insurance with Certain Underwriters at Lloyd's subscribing to Policy Number W205D7170101, which are members of underwriting syndicate numbers 2623 and 623 managed by Beazley Furlonge Ltd. (Underwriters) effective September 30, 2017 through September 30, 2018 ("the Policy Period").[5] The Policy provides four general classes of coverage to its insureds: 1) Directors, Officers and Entity Liability; 2) Regulatory Liability; 3) Fiduciary Liability; and 4) Employment Practices Liability. Suit was filed against the LGHS in a case styled *Alecia M. Rideau, M.D. v. Lafayette Health Ventures, Inc., Lafayette General Health System, Inc., and Al Patin* in the United States District Court for the Western District of Louisiana, Civil Action No. 00473 (the "underlying suit"). The underlying suit was filed on April 6, 2018 by Alecia M. *Rideau* and immediately tendered to Underwriters by LGHS for coverage in accordance with their insurance policy.  Within five (5) days[6] of the *Rideau* suit being filed, Underwriters acknowledged notice of the claim from LGHS.[7]

In his April 16, 2018 letter Beazley [Underwriters] Claims Manager Adam Keating wrote (in part) "We are in the process of *completing our coverage analysis* and *determining our obligations and duties under the policy*." (Emphasis supplied).  Three months later, on July 6,

---

[4] According to the policy submitted, the cost of the policy was $100,078.00.  A certified copy of the insurance policy is filed into the record of this case. Doc. R. 1-2.
[5] Doc. R. 1-2.
[6] On April 10, 2018 LGHS notified its broker (Marsh USA) of the lawsuit—and enclosed a copy of it.  On April 11, 2018, Marsh USA notified Beazley, and enclosed a copy of the lawsuit.
[7] Exhibit 1(a)—April 16, 2018 letter from Underwriters.

2018, Keating issued a reservation of rights letter[8] to LGHS and confirmed that "…Beazley [Underwriters] will advance Defense Costs incurred in connection with the *Rideau* Matter under the above-referenced Policy, in excess of the applicable Retention for this matter…."  In the July 16, 2018 letter, Underwriters outlined:

- That it will advance Defense Costs.[9]

- The policy limits and the retention amount.[10]

- A discussion of claims made and reported provisions.[11]

    - Underwriters specifically reserved its rights concerning the claims made and reporting provisions as it applied to the *Rideau* claim.[12]

- It highlighted the definition of a Claim.[13]

- It highlighted the definition of an Insured.[14]

- It highlighted the definition of a Wrongful Act.[15]

- It discussed the various items of damages that are covered.[16]

- It requested that the *Rideau* matter be reported to other insurers.[17]

- It outlined the defense agreement and noted that it will consider approving (which it did later) Mike Hebert as defense counsel.[18]

---

[8] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Although the letter does not bear the actual title of "reservation of rights," throughout the letter Underwriters specifically referencing that it is doing so (i.e. page 5, "In the meantime, Beazley reserves all rights as to when a **Claim** was first made against an **Insured**, and all its rights based on the representations made in the Policy Application.").

[9] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Page 1.

[10] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Page 2.

[11] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Pages 2, 5.

[12] *Id*.

[13] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Page 3.

[14] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Page 3.

[15] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Page 3.

[16] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Pages 5-6.

[17] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Page 6.

[18] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Page 7.

- It pointed out that LGHS is limited in settling the *Rideau* claim under the terms of the insurance policy.[19]  In other words, Underwriters, not LGHS, controlled the possible settlement of the *Rideau* litigation.

Thus, within the first ninety (90) days following the reporting of the claim, Underwriters were (or had already) completing their investigation/policy evaluation to provide LGHS with the two letters (acknowledgment/reservation of rights).  Underwriters homed in on important policy provisions— including the claims made and reported provisions (which it would over a year later use as a basis to decline coverage).  Importantly, Underwriters chose to participate in the defense of the *Rideau* litigation in accordance with the insurance policy provisions.  Underwriters would participate in the defense of *Rideau* litigation from the time the claim was submitted (April 11, 2019) through the date it issued its June 14, 2019 declination letter.  Underwriters further asserted its rights under its insurance policy to solely control/dictate any possible settlement of the *Rideau* litigation.  Underwriters, however, failed to seek a nonwaiver agreement between it and LGHS, as required by Louisiana law.

While the *Rideau* litigation continued through the discovery and motion practice, Underwriters continued to abide by its earlier writings (acknowledgment/reservation of rights).  Up until the issuance of its June 14, 2019 declination letter, Underwriters continued to participate in the defense of the *Rideau* litigation.  Up until the issuance of its June 14, 2019 declination letter, Underwriters continued to solely control settlement of the *Rideau* litigation.[20]  Underwriters never sought to obtain a nonwaiver agreement from LGHS, as required by Louisiana law.

---

[19] Exhibit 2(a)—July 6, 2018 "reservation of rights" letter from Underwriters.  Page 7.  Underwriters continued in this position that it controlled settlement of the *Rideau* litigation until the declination of rights letter was issued.  Thus, from the time the claim was submitted (April 11, 2018) until the issuance of the Declination letter (June 14, 2019), Underwriters was enforcing its insurance policy provision preventing LGHS from settling the *Rideau* litigation.  See Exhibit 2(a) page 7 and Exhibit 1(b), item number 10 (the pages are unnumbered).

[20] Underwriters continued in this position that it controlled settlement of the *Rideau* litigation until the declination of rights letter was issued.  Thus, from the time the claim was submitted (April 11, 2018) until the issuance of the

The *Rideau* litigation was set for a jury trial on July 15, 2019.  Mediation in the *Rideau* litigation was set for June 20, 2019.  On June 12, 2019 Underwriters issued an "updated" reservation of rights letter to LGHS.[21]  As of the writing of Underwriters "updated" letter, it continued to participate in the defense of the *Rideau* litigation—as it had for the past fourteen (14) months.  As of the writing of Underwriters "updated" letter, it continued to solely control any settlement of the *Rideau* litigation.  This "update," sent eleven (11) months after the initial reservation of rights letter, still failed to comply with Louisiana law.  This "update," sent eight (8) days before mediation and a month before trial, failed to comply with Louisiana law.  This "update," like the earlier reservation of rights, failed to seek a nonwaiver agreement from the LGHS—which is required under Louisiana law.

Forty-eight hours after Underwriters sent its "updated" *reservation of rights* letter to LGHS, it sent a *declination of rights* letter to LGHS.[22]  This untimely declination of rights sent only two (2) days after the "updated" reservation of rights has severely prejudiced[23] the rights of LGHS, coming only days before a scheduled mediation[24] (which had to be cancelled) and weeks before a scheduled trial.[25]  Moreover, this declination of rights demonstrated a change in position on the part of Underwriters—for fourteen (14) months, it participated in the defense of the *Rideau*

---

Declination letter (June 14, 2019), Underwriters was enforcing its insurance policy provision preventing LGHS from settling the *Rideau* litigation.  See Exhibit 2(a) page 7 and Exhibit 1(b), item number 10 (the pages are unnumbered).
[21] Exhibit 1(b)—June 12, 2019 letter from Underwriters.
[22] Exhibit 1(c)—June 14, 2019 letter from Underwriters.
[23] For example, had Underwriters simply issued a declination letter in April/July 2018, LGHS could have filed a 3rd party action against Underwriters within the *Rideau* litigation, conducted discovery in that litigation and sought a ruling from the Court that there was coverage.  LGHS could have also filed a declaratory action against Underwriters seeking a Court order as to coverage.  Either of these actions could have been accomplished over a year ago.  This would have allowed LGHS to determine whether it, or Underwriters, had the exposure to consider paying monies at the (first scheduled) mediation and/or paying any Judgment that might be entered.
[24] Since Underwriters solely controlled possible settlement of the *Rideau* litigation, issuing the declination letter eight (8) days before mediation (and fourteen (14) months after the claim was submitted) resulted in additional prejudice suffered by LGHS.
[25] Following the receipt of the declination letter, a motion to continue the trial was filed.  The trial was rescheduled and is currently set for October 21, 2019.

litigation and solely controlled any possible resolution of the *Rideau* litigation, only to change its position at the eleventh hour to the determent of LGHS.

Throughout the time from the tendering of the claim to Underwriters in April 2018 through the "updated" reservation of rights letter (June 12, 2019), Underwriters' actions led LGHS to believe that Underwriters would afford coverage for the *Rideau* claim.  For Fourteen (14) months Underwriters solely controlled whether the *Rideau* litigation settled.  Throughout this fourteen (14) month period LGHS had done everything asked of them by Underwriters and LGHS had the defense counsel and his rates approved by Underwriters, and LGHS allowed Underwriters to participate in the defense of the *Rideau* litigation—using the same (one) defense counsel.  LGHS was obviously lulled into a false sense of security of coverage by Underwriters as the mediation and trial were approaching.[26]

At no time during the fourteen (14) months between receipt of the notice of the claim and the declination of coverage did Underwriters seek or obtain a nonwaiver agreement from LGHS with respect to its ongoing assessment of the litigation.  Instead Underwriters, fourteen months after being placed on notice of the claim, eight (8) days before a scheduled mediation and thirty (30) days before trial, improperly denied coverage and defense costs.

Underwriters has also (as seen by its declination letter and Declaratory Action filing) chosen to ignore important provisions of *its* insurance policy in an effort to evade its obligations to provide insurance coverage as well as its duties of good faith and fair dealing to LGHS.  In both its declination letter and its Declaratory Action filing Underwriters points to the policy period

---

[26] For example, had Underwriters simply issued a declination letter in April/July 2018, LGHS could have filed a 3rd party action against Underwriters within the *Rideau* litigation, conducted discovery in that litigation and sought a ruling from the Court that there was coverage.  LGHS could have also filed a declaratory action against Underwriters seeking a Court order as to coverage.  Either of these actions could have been accomplished over a year ago.  This would have allowed LGHS to determine whether it, or Underwriters, had the exposure to consider paying monies at the (first scheduled) mediation and/or paying any Judgment that might be entered.

(September 30, 2017-2018) and the **Claim**,[27] contending that if events predated those dates there is no coverage.  Underwriters completely ignores the negotiated terms of its policy (which *it* wrote), which included a **Pending or Prior Litigation Date(s)** provision, which has a November 1, 2001 date.  The **Pending or Prior Litigation Date(s),** predates, by sixteen and one-half (16 ½) years, the events that Underwriters contends should preclude coverage.  Since clearly, even according to Underwriters' writings/filings the events at issue occurred in 2016-2017, which is between 2001-2018, there is clearly coverage for the *Rideau* litigation.

### Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."  *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish an element essential to that party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 317, 108 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986).  "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports the party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).  A court cannot "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  *Badon v. R J R Nabisco Inc.*, 224

---

[27] Throughout this memorandum, bold text will be used when it is similarly used in the Underwriters' insurance policy.

F.3d 382, 394 (5th Cir. 2000).  "The mere argued existence of a factual dispute will not defeat an

otherwise properly supported motion."  *Boudreaux v. Banctec, Inc.*, 336 F.Supp.2d 425, 430 (E.D.

La. 2005) (Berrigan, J.).

## Law and Application

I.  **Underwriters waived its policy defenses under its insurance policy by failing to obtain a nonwaiver agreement while at the same time continuing to investigate/evaluate coverage defenses, participate in and provide a defense and solely control settlement of the *Rideau* litigation.**[28]

An insurer may meet its obligation of providing a defense while simultaneously protecting

its own interest in contesting coverage by obtaining a nonwaiver agreement from its insured.

*Scottsdale Insurance Company v. Gulf Sea Temporaries, Inc.* 1999 WL 130633 (E.D. La.). If an

insurer with knowledge of facts indicating non-coverage voluntarily assumes the insured's defense

without a nonwaiver agreement, the insurer waives its defenses to coverage. *Steptore v. Masco

Construction Co., Inc*, 643 So.2d 1213 (La. 1994); *North American Capacity Insurance Company

v. Debis Financial Services, Inc*., 513 F.3d 466 (5th Cir, 2007); *North American Capacity

Insurance Company v. Brister's Thunder Karts, Inc.*, 287 F.3d 412 (5th Cir, 2002); *Peavy Co. v.

M/V ANPA*, 971 F.2D 1168 (5th Cir. 1992); *Underwriter's Insurance Company v. Offshore Marine

Contractors, Inc*., 442 F.Supp.2d 325 (E.D. La. 2006).  Additionally, the insurer's notice of its

intent to avail itself of the defense of non-coverage must be timely. *Foret v. Terrebonne Towing

Company*, 632 So.2d 344 (La. App. 1st Cir. 1993). Waiver is the voluntary or intentional

relinquishment of a known right; when an insurer fails to raise, at the outset, a known defense to a

---

[28] As discussed later in this memorandum, there is clearly coverage under the Underwriters' insurance policy in favor of LGHS for the *Rideau* claim/litigation.  LGHS presents this Honorable Court with a variety of reasons why this Motion for Partial Summary Judgment must be granted, some of which include Underwriters' refusal to abide by Louisiana law (i.e. lack of a nonwaiver agreement).  Regardless, as discussed later, there is clearly coverage under the insurance policy.

claim, that defense is waived.[29] The question then is whether these facts give rise to such a waiver. They very clearly do.

Waiver and estoppel principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation, and in order to reinforce the role of the lawyer as the loyal advocate of the client's interest.[30] Moreover, waiver principles are designed to prevent this exact situation, where an insurer lulls an insured (through actions such as approving defense counsel, participating in the defense of the Rideau litigation and solely controlling possible settlement) into a false sense of security that the claim is covered.

The Louisiana Supreme Court in *Steptore* directly addressed the issue of waiver and estoppel regarding insurance coverage defenses. As in the present case, the underwriter (Ocean Marine) in *Steptore*, had notice of a potential coverage defense upon service of the original Petition for Damages. However, Ocean Marine assumed the defense of its insured without entering into a nonwaiver agreement and continued with the single representation even after its own interests were adverse to that of the assured.

Six months after undertaking the defense, Ocean Marine denied coverage on the grounds that the assured breached a navigation warranty contained in the policy. The court held that Ocean Marine had waived any coverage defenses under the policy, when, with knowledge of facts indicating non-coverage (i.e. the Petition for Damages), it assumed and continued with the insured's defense without obtaining a nonwaiver agreement. The court in *Steptore* referenced an earlier Louisiana Supreme Court decision, *Tate v. Charles Aguillard Insurance & Real Estate, Inc.*, 508 So.2d 1371 (La. 1987), as support for its ruling.

---

[29] *Id.* at 357.
[30] *Steptore*, 643 So.2d at 1216.

In *Steptore*, the insurer's *six-month* involvement in the defense of the litigation, in the absence of a nonwaiver agreement, was found to have waived any coverage defenses the insurer would have otherwise been able to avail itself of.  In this case, Underwriters' participation in the defense of this litigation and sole control over settlement of the Rideau litigation, more than doubled the time that was involved in the Louisiana Supreme Court's decision in *Steptore*—**14 months versus 6 months**. Moreover, Underwriters was aware of facts sufficient to author a reservation of rights letter 11 months before the declination letter, yet never sought nor obtained a nonwaiver agreement.  To the contrary, Underwriters chose not to obtain a nonwaiver agreement and instead to deny coverage, less than a month before the trial of this case and only days before a scheduled mediation. *See also Perez v. Dean Equip., Inc.,* CIV.A. 04-3094, 2006 WL 2662999, at *3 (E.D. La. Sept. 15, 2006), aff'd, 262 Fed.Appx. 622 (5th Cir.2008) ("When [insurer] gained knowledge of facts indicating that it had a right to deny coverage, under Louisiana law, it was required to obtain a nonwaiver agreement reserving its rights.").  The failure of Underwriters to secure a nonwaiver agreement while continuing to allegedly evaluate coverage and participating in the defense of the case and solely controlling settlement of the Rideau litigation, under *Steptore*, mandates that this Honorable Court find that any coverage defenses have been waived.

## II.  The eleventh-hour declination of coverage results in Underwriters waiving any coverage defenses and/are estopped from contesting insurance coverage.

The principles of waiver/estoppel against an underwriter apply to any provision in the policy.[31] In *Brister's,* the U.S. Fifth Circuit Court of Appeals upheld the district court's finding of coverage by an insurer (North American) whose policy had been cancelled by the assured and was not even in effect at the time the underlying personal injury damage claim arose. The U.S. Fifth Circuit, relying on the Louisiana Supreme Court decisions in *Stepore* and *Tate,* reiterated the

---

[31] *North American Capacity Insurance Company v. Brister 's Thunder Karts, Inc.*, 287 F.3d 412 (5th Cir. 2002).

position that waiver may apply to any provision of an insurance contract when an insurer knowingly and voluntarily elects to relinquish its right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered.[32]

In *Brister's*, North American was aware that the underlying personal injury claim had occurred more than a year after its coverage of Brister's had terminated. However, like in *Steptore* and this case, the insurer did not outright deny coverage, nor was there a nonwaiver agreement. In fact, North American appointed counsel and provided a defense to *Brister's*, then waited three years before denying coverage. The court held that North American actions towards the assured resulted in a waiver of any coverage defenses under its policy.

The holding in *Brister's* is applicable to this case.  Like North American, Underwriters was aware of possible coverage defenses it might have when the claim was submitted to it in April 2018.  Underwriters was clearly aware of the possible (erroneous) coverage issue when it issued its July 6, 2018 reservation of rights letter.   Yet, instead of securing a nonwaiver agreement, Underwriters (like North American in *Brister's*) participated in the defense (and solely controlling settlement) of the Rideau litigation for over fourteen (14) months.  During this time, Underwriters, like North American, chose not to secure a nonwaiver agreement.  LGHS respectfully requests that this Honorable Court rule like the Court did in *Brister's* concerning North American's improper actions and find that any coverage defenses that Underwriters believes it has have been waived.

Cases from around the country have likewise held that if an insurer delays on declining coverage then it cannot avail itself of policy provisions that otherwise might result in there being no coverage.  For example:

- In *Central Mutual Insurance Co. v. Kammerling*, 212 Ill.App.3d 744, 156 Ill. Dec. 826, 571 N.E.2d 806 (1991), wherein the court held a *six-month* delay in filing a declaratory

---

[32] *North American Capacity Insurance Company v. Brister's Thunder Karts, Inc.*, 287 F.3d 412 (5th Cir, 2002), at 416.

judgment action is unreasonable, the insurer had notice of the claim about 10 months before it filed for a declaratory judgment and about six months after it had already acknowledged that it had a duty to defend the insured.

- Under New York common law, an insurer that undertakes the defense of an insured may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffered prejudice as a result of that delay. *Scottsdale Ins. Co. v. United Indus. & Const. Corp.,* 137 F.Supp.3d 167 (E.D.N.Y.2015)—there were three (3) claims involved which the Court found the insurer was barred from asserting coverage defenses based upon the time that passed between the notice of the claim and coverage denial, *three (3) months*, *twenty-nine* (29) months and *thirty-two* (32) months; *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119 (2d Cir.2002)—*nine (9) months* lapsed between the notice of the claim and the denial of coverage resulting in the Court denying the insurer's ability to avail itself of coverage defenses.

- Commercial general liability (CGL) insurer's *15-month* delay in asserting a coverage defense and withdrawing from an additional insured's defense against an underlying tort suit after it learned of the facts supporting the coverage defense precluded it from relying on the coverage defense under the doctrines of estoppel and implied waiver, where the insurer controlled all aspects of the underlying defense--including discovery, litigation strategy, and settlement--without reserving its right to assert a coverage defense, and the additional insured relied on the insurer to control and conduct its defense until resolution of the underlying suit. *Transcon. Ins. Co. v. J.L. Manta, Inc*., 714 N.E.2d 1277 (Ind. Ct. App.1999).

- In *Korte Const. Co. v. Am. States Ins.,* 322 Ill.App.3d 451, 458; 750 N.E.2d 764, 769 (2001), the court held that an insurer who did not act for *twelve months* was estopped from asserting any coverage defenses.

- In *W. Am. Ins. Co. v. J.R. Const. Co*., 334 Ill.App.3d 75, 86; 777 N.E.2d 610, 619 (2002), the court held that an insurer who did not act for *twenty-one and a half* months was also estopped.

Despite Underwriters' knowledge of facts which, if true, would have given rise to the very same defenses asserted by it in this action, it continued the same course of action it had from the outset. Underwriters continued to participate in the defense of the Rideau litigation for fourteen (14) months before deciding to deny coverage.  Underwriters continued to solely be in charge of possible settlement of the Rideau litigation for fourteen (14) months before deciding to deny coverage.  For fourteen (14) months Underwriters chose not to seek a nonwaiver agreement with

12

LGHS.   The entirety of Underwriters' actions since notification of the claim are clearly inconsistent with preservation of its policy defenses. This is enough, but Underwriters went much farther than simple acquiescence. Waiver describes the act, or the consequences of the act, of one party only.[33] Since there was never a nonwaiver agreement signed by the parties, and the declination was issued by Underwriters untimely (thus estopping it from asserting coverage issues), coverage should be found.

While Underwriters did provide a reservation of rights (but not a nonwaiver agreement) letter over a year before it made the decision to deny coverage, such action is not enough under the facts of this case to preserve coverage defenses. Underwriters issued the perfunctory July 6, 2018 reservation of rights letter while continuing to participate in the defense of the Rideau litigation and controlling possible settlement.  Under Louisiana law this resulted in Underwriters waiving any coverage defenses that it might have otherwise had available to it.

Notably, in *Emery v. Progressive Cas. Ins. Co.,* the court rejected Progressive's argument that, after it had knowledge of facts indicating noncoverage under the insurance policy, its only duty was to issue a reservation of rights letter and that once it had done so, it was then permitted to provide only one attorney to represent both itself and its insured while it further investigated the coverage issue.[34] The court stated that the actions on the part of Progressive constituted conduct "so inconsistent with an intent to enforce its right to assert its coverage defense as to induce a reasonable belief that the right had been relinquished." *Id*. *Emery* stands for the proposition that a reservation of rights letter without subsequent actions demonstrating such intent to assert the coverage defense will waive the defense. As applied to this case, Underwriters' perfunctory July 2018 reservation of rights letter alone cannot counteract the subsequent months of conduct

---

[33] *Pitts v. American Security Life Insurance Co*., 931 F.2d351 (5th Cir. 1991).
[34] 2010-0327 (La. App. 1 Cir. 9/10/10, 7); 49 So.3d 17, 22.

inconsistent with any intent to assert a coverage defense.  Moreover, the facts of this case are even stronger to mandate a finding of insurance coverage in favor of LGHS—Underwriters solely was responsible for settling the Rideau litigation.  This is clearly indicative of conduct on the part of Underwriters that is inconsistent with a position that there is no coverage.

Finally, LGHS points out that that Underwriters improperly places the blame for its own improper actions in this case on its LGHS.[35]  During the pertinent time period (April 11, 2018[36]-- June 14, 2019[37]), Underwriters:

- Was engaged in the defense of the Rideau litigation with LGHS—without a nonwaiver agreement between it and LGHS.[38]

- Approved the engagement of one attorney (Michael Hebert) for the defense of the *Rideau* litigation.

- Solely was in charge of any possible settlement of the *Rideau* litigation.

- (Allegedly) knew that it had requested information which it believed that it needed to further examine coverage, yet a nonwaiver agreement was neither sought nor obtained from LGHS.[39]

---

[35] See for example, Doc. R. 1 (paragraphs 25-29); Doc. R. 11 (Underwriters' opposition to LGHS 12b6 motion), paragraph 3 (g)—page 7 of 19.
[36] This is the date Underwriters acknowledges it received notice of the claim.
[37] This is the date of the declination letter.
[38] This allowed Underwriters to confer with and receive reports from LGHS/Underwriters' defense counsel on the merits and possible exposure of the *Rideau* litigation.
[39] LGHS is giving Underwriters the benefit of the doubt on this.  Underwriters referenced possible coverage issues on April 16, 2019.  In his April 16, 2018 letter Adam Keating wrote (in part) "We are in the process of *completing our coverage analysis* and *determining our obligations and duties under the policy*."  In this letter Keating was "**completing our coverage analysis**…."  Keating, of course, didn't make any reference or warning to LGHS that he intended to take fourteen (14) months to further complete this coverage analysis and intended to wait until a month before trial to issue that position—which was a declination of coverage.

- Did nothing to ever secure a nonwaiver agreement such that it would protect the interest of LGHS during the fourteen (14) months in which Underwriters participated in the defense of the *Rideau* litigation.

- Never withdrew its involvement in the defense of the *Rideau* litigation.

- Did nothing to ever secure a nonwaiver agreement such that it would protect the interest of LGHS during the fourteen (14) months in which Underwriters solely controlled possible settlement of the *Rideau* litigation.

- Never withdrew its sole control over settlement of the *Rideau* litigation.

- Did not follow up with either LGHS or the LGHS/Underwriters' defense counsel to ensure that any information that it needed would be timely acquired such that LGHS' interests could be protected.

- Did not send a declination of rights letter until a month before trial (as opposed to within thirty (30) days of the April 2017 acknowledgment letter or the July 2018 reservation of rights letter).[40]

- Did not file a Declaratory Action within a time frame that would have allowed LGHS to properly prepare for the *Rideau* mediation/trial.[41]

Underwriters would have this Honorable Court believe that it could not have acquired information to further evaluate the coverage issue (which it previously stated it was "***completing***" in April 2018) in April, May, June, July, August, September, October, November, December,

---

[40] For example, had Underwriters simply issued a declination letter in April/July 2018, LGHS could have filed a 3rd party action against Underwriters within the *Rideau* litigation, conducted discovery in that litigation and sought a ruling from the Court that there was coverage. LGHS could have also filed a declaratory action against Underwriters seeking a Court order as to coverage. Either of these actions could have been accomplished over a year ago. This would have allowed LGHS to determine whether it, or Underwriters, had the exposure to consider paying monies at the (first scheduled) mediation and/or paying any Judgment that might be entered.

[41] *Id.*

January, February, March, April, May or June (2019)—due to the fault of LGHS.  Underwriters would have this Honorable Court believe that its claims department did not lull LGHS into a false sense of security in favor of coverage by fully participating in the defense of the *Rideau* litigation without ever securing a nonwaiver agreement or declining coverage in April, May, June, July, August, September, October, November, December, January, February, March, April, May or June (2019).  Underwriters would have this Honorable Court believe that its claims department did not lull LGHS into a false sense of security in favor of coverage by Underwriters (not LGHS) being solely in charge of any possible settlement of the *Rideau* litigation without ever securing a nonwaiver agreement or declining coverage in April, May, June, July, August, September, October, November, December, January, February, March, April, May or June (2019).  Underwriters would have this Honorable Court believe that an insurer can engage in the defense of an insured with one attorney without ever securing a nonwaiver agreement, get the full evaluation of the merits of a case and the damages associated with the claim from defense counsel (one attorney—Michael Hebert), solely control possible settlement of the Rideau litigation, then wait until right before a scheduled trial (and in this case a week before mediation) to deny coverage.  Underwriters' position is simply untenable, fundamentally unfair to an insured, and against Louisiana (and likely every other State) law.

The cases cited above clearly stand for the proposition that an insurer cannot delay in its decision to deny coverage to the detriment of its insureds.  Here, Underwriters acknowledged the claim within days of it being made, advised LGHS that is was "***completing***" its coverage analysis (5 days after receipt of the claim), issued a reservation of rights letter within 90 days, fully participated in the defense of the litigation, controlled the right to settle the Rideau litigation and then waited fourteen (14) months (days before a mediation and a month before trial) before

16

deciding to deny coverage.  All the time Underwriters never sought or acquired a nonwaiver agreement, as required by Louisiana law.

Finally, it is pointed out that Underwriters' eleventh-hour declination letter sent only eight (8) days before the scheduled mediation and a month before trial is very suspect.  For the fourteen (14) months before issuing its declaration letter Underwriters participated in the defense of the *Rideau* litigation and solely controlled the settlement of that case.  During these fourteen (14) months, the parties in the *Rideau* litigation were subject to a scheduling order that dictated parties' actions, such as filing a third-party action.[42]  The actions of Underwriters in stringing along LGHS for fourteen (14) months before issuing its declination letter prevented LGHS from consideration of filing a third party action against Underwriters in the *Rideau* litigation—which would have allowed the issue of insurance coverage to be decided within the context of that litigation.  It would have allowed the *Rideau* Court, in the context of the *Rideau* litigation, to decide the insurance coverage issue in advance of the previously scheduled mediation/trial date, but for the Underwriters tactical decision of delaying its coverage declination until the eleventh hour.  The Underwriters tactical decision to delay in issuing its declination letter until after the deadline for joinder of parties in the Rideau litigation has left LGHS (days before a scheduled mediation and a month before trial) has resulted in LGHS being severely prejudiced.

---

[42] The underlying suit is styled *Alecia M. Rideau, M.D. v. Lafayette Health Ventures, Inc., Lafayette General Health System, Inc., and Al Patin* in the United States District Court for the Western District of Louisiana, Civil Action No. 6-18-cv-00473.  In the *Rideau* matter there were several scheduling orders, two (2) of which have deadlines for Joinder of Parties/Amendments of Pleadings (Doc. R 8; 25).  **The last deadline (Doc. R. 25) set the deadline at January 7, 2019—eight (8) months after the claim was submitted and six (6) months before Underwriters issued its June 14, 2019 declination of rights letter**.  Courts may take judicial notice of other dockets.  See for example, *Haygood v. Begue*, 2014 WL 1320152, at *1 (W.D. La. 2014) ("Additionally, pleadings filed in state or other federal district courts are matters of public record and the Court may take judicial notice of  those documents in connection with a Rule 12(b)(6) Motion to Dismiss."); *Cinel v. Connick*, 15 F. 3d 1338, 1343 n. 6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."); *Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (taking judicial notice and granting summary judgment when issue had already been decided adversely to plaintiff in a related case).

The actions of Underwriters in either failing to obtain the required nonwaiver agreement and/or fully participating in the defense of the *Rideau* litigation and controlling settlement, clearly lulled LGHS into a false sense of security/coverage—to the detriment of LGHS.  Moreover, the Underwriters' tactical decision to delay issuing a declination letter until after the joinder of party deadline passed in the Rideau litigation was done to the detriment of LGHS.  These uncontradicted facts demonstrate that Underwriters cannot, under Louisiana law, deny coverage in this case.[43]

III.    **The *Rideau* claim was properly and timely submitted to Underwriters; thus, there is insurance coverage in favor of LGHS.**

As outlined earlier in this memorandum, within days of receipt of the *Rideau* lawsuit, LGHS submitted it to Underwriters.  Underwriters accepted the claim, engaged in the defense of the *Rideau* litigation, solely controlled possible resolution of the *Rideau* litigation and improperly chose to evade coverage fourteen (14) months later in issuing its declination letter.  In doing so, Underwriters ignored other provisions of its policy that demonstrate insurance coverage of the *Rideau* claim.  LGHS contends that when the entire insurance policy is read together with the it clearly demonstrates that there is insurance coverage in favor of LGHS.

**The *Rideau* litigation is a Claim as defined in the insurance policy**.

A certified copy of the insurance policy is attached to Underwriters' filing.[44]  Underwriters attempts to narrowly read its insurance policy such that it alleges that the **Claim** must be submitted only in the policy period (September 30, 2017-2018).[45]  This reading, perhaps not surprisingly, ignores other provisions which demonstrate that there is coverage in favor of LGHS concerning the *Rideau* claim/litigation.

---

[43] These same facts clearly demonstrate that Underwriters' actions in this matter is violative of its duty of good faith and fair dealing, subjecting it to significant penalties and attorney fees.  That portion of LGHS cross claim will be addressed once discovery commences such that additional evidence can be brought before this Honorable Court.
[44] Doc. R. 1-2.
[45] Doc. R. 1, paragraphs 13,16, 17,20, 21,

        (i).      **Definition of a Claim**.

The insurance policy defines (in pertinent part) a **Claim**[46] as follows:

II.    DEFINITIONS

…

B.    "**Claim**" means:

    …

    2.    a civil, criminal, administrative, investigative or regulatory proceeding initiated against any of the **Insureds**, including any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by:

        a.    The service of a complaint or similar pleading:

        b.    The filing of a notice of charges, investigative order or similar document;

        c.    Written notice or subpoena from an investigatory authority identifying such **Insured** as an entity or person against whom formal proceeding may be commenced:

    …

The *Rideau* lawsuit was a "…a civil … proceeding initiated against any of the **Insureds…**" (LGHS).  Clearly, when LGHS tendered the *Rideau* lawsuit to Underwriters, this was a **Claim** as defined in the insurance policy.

        **(ii)    Notification requirement.**

    The insurance policy dictates the type of notice of a **Claim** that must be provided to Underwriters.[47]  The requirement is that the claim must be reported either before the end of the policy period (September 30, 2018) or during the optional reporting period.  LGHS reported the *Rideau* claim/litigation immediately after it was filed, which was during the policy period.[48]

---

[46] Doc. R. 1-2, pages 43-44 of 103.

[47] Doc. R. 1-2, page 12 of 103 defines Notification requirement.  This was amended, Doc. R. 1-2, page 79 of 103.

[48] The policy period was September 30, 2017-18.  Doc. R. 1-2.

Underwriters acknowledges it received notice of the claim as of April 16, 2017—during the policy period.[49]  Thus, there is no issue as to whether Underwriters was properly notified of the claim during the policy period.  Underwriters received proper and timely notice of the claim/*Rideau* litigation.

### (iii)     Pending or Prior Litigation Date(s).

Like many insurance policies, the Underwriters insurance policy includes a **Pending or Prior Litigation Date(s)** provision.  The November 1, 2001 date was a negotiated part of the Underwriters' insurance policy.[50]  The dates associated with this (Retro) coverage is found in the Declarations page of the insurance policy.[51]  This provision provides as follows:

| Item 10. | **Pending or Prior Litigation Date(s)**[52] | |
|---|---|---|
| | **Clause** | Date |
| | Directors, Officers and Entity Liability Clause | 01-Nov-2001 |
| | Employment Practices Liability Clause | 01-Nov-2001 |
| | Third Party Wrongful Acts | 01-Nov-2001 |
| | Fiduciary Liability Clause | 01-Nov-2001 |

Clearly the pertinent time period concerning the Employment Practices Liability Clause provisions (which apply here in conjunction with the other provisions of the policy), dates back to November 1, 2001.

The importance of the **Pending or Prior Litigation Date(s),** as applied to an evaluation of coverage in favor of LGHS, can be seen when reading other provisions of the insurance policy,

---

[49] Exhibit 1(a).
[50] Interestingly, Underwriters fails to mention the **Pending or Prior Litigation Date(s)** in any of their letters, including the Declination of Coverage letter.  It also fails to mention it in its Declaratory Action filing.
[51] Doc. R. 1-2, page 4 of 103.
[52] **Pending or Prior Litigation Date(s)** is not a defined term in the insurance policy.  See for example, II DEFINITIONS under the general or employment policy provisions (Doc. R. 1-2, page 8-9 of 103; 43-49 of 103).

specifically those found in the **EXCLUSIONS.**   In pertinent part, this portion of the policy

provides as follows:[53]

## II.    EXCLUSIONS

The Underwriters shall not be liable to make any payment for **Loss** in connection with or resulting
from any **Claim**:

   A.  …

   B.  Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in
   any way involving:

      1.  Any demand, suit, or other proceeding pending, or order, decree or judgment entered
      against any **Insured** on or prior to the applicable Pending or Prior Litigation Date set
      forth in Item 10. of the Declarations, or any **Wrongful Act, Interrelated Wrongful
      Act**, fact, circumstance or situation underlying or alleged therein;

      …

What is clear is the exclusion cited above excludes insurance coverage if the "…demand, suit, or

other proceeding…" occurred prior to the inception of the insurance policy (September 30, 2017),

*except*, if that "…demand, suit, or other proceeding…" occurred between the **Pending or Prior**

**Litigation Date(s)**—which in this case is November 1, 2001, and the end of the policy (September

30, 2018).   Clearly the notice of the claim was received by Underwriters as of April 16, 2017,

which is sixteen and a half (16 ½) years after the November 1, 2001 **Pending or Prior Litigation**

**Date(s)**, and five (5) months before the expiration of the policy period.

   Underwriters allege that LGHS had notice of a **Claim** as early as 2016.[54]  Given the clear

language cited above contained in the insurance policy, even if these facts were true, those events

alleged by Underwriters to support their allegations pertaining to no coverage, do not predate the

**Pending or Prior Litigation Date(s)** of November 1, 2001.  Clearly, according to the allegations

---

[53] Doc. R. 1-2, pages 9-10 of 103.
[54] Doc. R. 1, paragraph 31.

of Underwriters, the events it alleges as constituting a **Claim** occurred over a decade *after* the

**Pending or Prior Litigation Date(s)** of November 1, 2001.  Thus, since the (Rideau litigation)

**Claim** clearly occurred between November 1, 2001 and September 30, 2018, it is covered under

the Underwriters' insurance policy

      To illustrate the time period involved, LGHS highlights the following:

| **Dates** | **Policy provision/event** |
|---|---|
| November 2, 2001 | **Pending or Prior Litigation Date(s)** |
| 2016 | Dates suggested by Underwriters of LGHS notice of claim[55] |
| April 6, 2018 | Filing of *Rideau* lawsuit |
| April 16, 2018 | Underwriters acknowledge notice of claim[56] |
| September 30, 2018 | Expiration of Underwriters-LGHS insurance policy[57] |

Thus, even assuming that Underwriters is correct that events in 2016 constituted notice of a **Claim**

(or an **Interrelated Wrongful Act**), there would be coverage under the **Pending or Prior**

**Litigation Date(s)** provisions of the policy.

      Undersigned counsel points out that there is a dearth of case law with facts/insurance policy

similar to that presented in this case.  The vast majority of the case law with a **Pending or Prior**

**Litigation Date(s)** provision in the insurance policy addresses the opposite situation, that is where

there is an attempt to determine coverage when the events at issue *predate* the **Pending or Prior**

**Litigation Date(s).**  Here there is no question but that *all the events at issue* follow (by over sixteen

and one-half (16 ½) years) the **Pending or Prior Litigation Date(s).**  LGHS has located one

appellate decision in which similar facts and insurance provisions (**Pending or Prior Litigation**

---

[55] Doc. R. 1, paragraph 31.
[56] Exhibit 1(a).
[57] Doc. R. 1-2, page 3 of 103.

Date(s)) were at issue—and this case fully supports LGHS interpretation of the Underwriters' insurance policy in favor of coverage.

In *Gastar Exploration LTD. V U. S. Specialty Insurance Company*, 412 S. W. 3d 577 (2013), Gastar filed suit against its insurers (U.S. Specialty—primary and Axis –excess) for their failure to provide coverage concerning ten (10) lawsuits filed against it.  The insurers issued claims made and reported insurance policies with a "Policy Period" of November 1, 2008-2009.  Like the LGHS insurance policy, the insurance policies issued in favor of Gastar had a **Prior and Pending Litigation Exclusion**. The **Prior and Pending Litigation Exclusion** included a date of May 31, 2000.  Gastar was named as a defendant in three (3) suits that predated the "Policy Period" and seven (7) suits that were filed during the "Policy Period."  The insurers, like Underwriters, denied coverage citing the "Claims made and Reported" nature of the insurance policy.  The insurers, like Underwriters, attempted to connect all the lawsuits to events/claims that *predated* their "Policy Period."  The insurers, like Underwriters, failed to acknowledge that the policy they/it authored included a **Prior and Pending Litigation Exclusion** in their declination letter/Declaratory Action filing.

The Court, in denying the insurers' narrow interpretation of the insurance policy, discussed the **Prior and Pending Litigation Exclusion** (which reads almost identical to that found in the Underwriters' insurance policy). The Court pointed out that all Claims (lawsuits) were first made to Gastar in 2006 (which was six (6) years following the date contained in the **Prior and Pending Litigation Exclusion**).  The Court held that there was coverage under the insurance policies.  In discussing the alleged conflict between the provisions of the insurance policies[58] the Court stated (and held) that:

---

[58] i.e. Claim includes only for the "Policy Period" whereas the **Prior and Pending Litigation Exclusion** extends coverage to those events/claims that occur after the May 31, 2000 date—eight (8) years before the "Policy Period."

…The insurers argue the Seven Gastar Suits are related to Claims first made in 2006 and are therefore deemed to be a single Claim made at the time the earlier was made, which was well before the Policy Period.  Condition C would thus exclude coverage for the Seven Gastar Suits, while Endorsement 10 would place them in the covered window for Claims related to litigation filed after May 31, 2000, but before the effective date of the policy.  Under these facts, we conclude Condition C and Endorsement 10 conflict or at best, when read together, create an ambiguity.  When provisions in an insurance contract conflict, a court must adopt the interpretation that most favors coverage for the insured…As a result, Endorsement 10 controls…

…

For these reasons, we reject the insurers' contention that Gastar's interpretation of Endorsement 10 impermissibly creates coverage.

*Gastar*, supra at 584-585.

The Court in Gastar was faced with an identical situation as is presented in this case/motion.  In both cases:

- The insurance policy contained a "Policy Period" definition—which limited it to the year of the term of the insurance policy.

- The insurance policies were claims made and reported.

- The insurance companies wrote the insurance policies.

- The parties to the insurance agreements bargained for (and the insureds paid for) a date preceding the "Policy Period."

  - Gastar negotiated a date that preceded the "Policy Period" by eight (8) years (May 30, 2000).

  - LGHS negotiated a date that preceded the "Policy Period" by sixteen and one-half (16 ½) years, to November 1, 2001.

- The insurance companies chose to ignore the negotiated (**Prior and Pending Litigation Exclusion** in *Gastar*— **Pending or Prior Litigation Date(s)** for LGHS) dates that predate the "Policy Period."

24

- The insurance companies denied coverage, relying upon their respective definitions of a **Claim** and **Interrelated Wrongful Acts**—ignoring the respective dates contained in the other portions of their insurance policies (here—**Pending or Prior Litigation Date(s)** (November 1, 2001) and the end of the policy period (September 30, 2018).

- The Claim(s) are all between the **Prior and Pending Litigation Exclusion** in *Gastar*—**Pending or Prior Litigation Date(s)** for LGHS, and the expiration of the insurance policy(s).

Clearly the language of the insurance agreements in both *Gastar* and this case provide for the negotiated dates that predate the "**Policy Period**" definitions.  Clearly Underwriters, when it wrote and issued the LGHS insurance policy was aware of the **Pending or Prior Litigation Date(s)** provisions—which included a date that predated the "Policy Period" definition.  As the author of the LGHS insurance policy, Underwriters cannot now claim that it didn't know what it included in it!  Clearly, as in *Gastar*, the **Pending or Prior Litigation Date(s)** provision/date dictates that the *Rideau* litigation is a covered **Claim** under the Underwriters' insurance policy (as it follows the **Pending or Prior Litigation Date(s)** and was submitted before the expiration of the insurance policy).

LGHS contends that when a fair reading takes place of the entire insurance policy, there is but one conclusion—insurance coverage exists in favor of LGHS concerning the *Rideau* claim/litigation.  At a minimum, if there is a conflict in the insurance policy (which LGHS contends there is not), this would create an ambiguity which, under Louisiana law, must be interpreted in favor of insurance coverage for LGHS.[59]

---

[59] "If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured." *Hebert v. Webre*, 2008-0060 (La. 5/21/08, 5); 982 So.2d 770, 774; "If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage." *Bonin v. Westport*

## Conclusion

Within weeks of LGHS tendering this claim to Underwriters, a reservation of rights letter was issued which included a discussion of the claims made and reporting issues/language. Underwriters chose not to secure a nonwaiver agreement. Thereafter Underwriters participated in the defense of the *Rideau* litigation and Underwriters (not LGHS) solely controlled possible settlement. Underwriters clearly lulled LGHS into the belief that there was coverage.[60] Only days before the mediation was set and weeks before the trial (and only two days after issuing an "updated" reservation of rights letter) did Underwriters issue its declination of coverage.

For an insurer to avoid waiving coverage defenses, it must secure a nonwaiver agreement. *Steptore v Masco*, 643 So. 2d 1213 (La. 1994). Underwriters failed to obtain a nonwaiver agreement and did not timely decline coverage. *See also Perez v. Dean Equip., Inc.,* CIV.A. 04-3094, 2006 WL 2662999, at *3 (E.D. La. Sept. 15, 2006), aff'd, 262 Fed. Appx. 622 (5th Cir.2008) ("When [insurer] gained knowledge of facts indicating that it had a right to deny coverage, under Louisiana law, it was required to obtain a nonwaiver agreement reserving its rights."). Moreover,

---

Ins. Corp., 2005-0886 (La. 5/17/06, 5); 930 So.2d 906, 911; "Ambiguous policy provisions are generally construed against the insurer and in favor of coverage." *Cadwallader v. Allstate Ins. Co*., 2002-1637 (La. 6/27/03, 4); 848 So.2d 577, 580; "Ambiguous policy provisions generally are to be construed against the insurer and in favor of coverage." *Carrier v. Reliance Ins. Co*., 1999-2573 (La. 4/11/00, 12); 759 So.2d 37, 43; "If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured. This rule of strict construction requires that ambiguous policy provisions be construed against the insurer who issued the policy and in favor of coverage to the insured." *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co*., 630 So.2d 759, 764 (La.1994); "If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of coverage for the insured." *Henly v. Phillips Abita Lumber Co*., 2006-1856 (La.App. 1 Cir. 10/3/07, 5); 971 So.2d 1104, 1108–09; "It is too well settled in our jurisprudence to require citation of authority that if an insurance policy is ambiguous, it must be construed against the insurer." *Wilks v. Allstate Ins. Co*., 177 So. 2d 790, 794 (La. Ct. App. 3d Cir. 1965); "It is true that ambiguous provisions in a policy of insurance are to be construed favorably to the insured, and where there is irreconcilable conflict between stipulations, the one most favorable to the insured will be adopted as truly reflecting the intention of the parties." *Jones v. Washington Nat. Ins. Co*., 2 So.2d 696, 699 (La. Ct. App.1941); "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." Louisiana Civil Code art. 2056.

[60] i.e. requiring that defense counsel and his rates be approved and participating in the defense of the Rideau litigation.

Underwriters actions in handling the claim, participating in the defense of the *Rideau* litigation and solely controlling the ability to settle the *Rideau* litigation for fourteen (14) months before deciding to issue a declination letter, only weeks before trial, operates as a waiver of any coverage provisions that would have otherwise prevent coverage.  Accordingly, LGHS is entitled to judgment as a matter of law, and there should be a finding of coverage in favor of the LGHS.

Finally, there is no question but that under the terms of the insurance policy, the claim was timely and properly submitted to Underwriters.  The claim was submitted between the **Pending or Prior Litigation Date(s)** (November 1, 2001) and the end of the policy period (September 30, 2018).  Under the terms of the insurance policy, coverage is afforded in favor of LGHS.

LGHS respectfully requests that this Honorable Court grant this partial motion for summary judgment and issue a ruling that the Underwriters' insurance policy affords coverage in favor of it concerning the *Rideau* litigation and denying Underwriters' Declaratory Action.

Respectfully submitted:

GIBSON LAW PARTNERS, LLC

*/s/ James H. Gibson*
JAMES H. GIBSON (T.A.) (#14285)
JACQUELYN L. DUHON (#38199)
2448 Johnston Street (70503)
P.O. Box 52124
Lafayette, LA  70505
Phone:  (337) 761-6023
Fax:  (337) 761-6061
Email:  jimgibson@gibsonlawpartners.com
Email: jackieduhon@gibsonlawpartners.com
Counsel for Defendants, LAFAYETTE HEALTH
VENTURES, INC., LAFAYETTE GENERAL
HEALTH SYSTEM, INC., LAFAYETTE
GENERAL MEDICAL CENTER, INC., and AL
PATIN

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Lafayette, Louisiana, this 17th day of September, 2019.

*/s/ James H. Gibson*
JAMES H. GIBSON